# In re CHAPMAN, Petitioner.

### ORIGINAL.

No number. Submitted January 22, 1895. — Decided February 4, 1895.

C., being summoned before a committee of the Senate of the United States and questioned there as to certain transactions, declined to answer the questions upon the grounds that they related to his private business, and that they were not authorized by the resolution appointing the committee. He was thereupon indicted in the Supreme Court of the District of Columbia under the provisions in Rev. Stat. §§ 102, 103, 104. He demurred to the indictment, and, the demurrer being overruled, an appeal was taken to the District Court of Appeals, where the indictment was sustained as valid, and the case remanded. He then applied to this court for permission to file a petition for the issue of a writ of *habeas corpus.* *Held*,

(1) That the orderly administration of justice will be better subserved by declining to exercise appellate jurisdiction in the mode desired until the conclusion of the proceedings;

(2) That if the judgment goes against the petitioner and a writ of error lies, that is his proper and better remedy;

(3) That if a writ of error does not lie, and the Supreme Court of the District is without jurisdiction, the petitioner may then apply for a writ of *habeas corpus.*

It is a judicious and salutary general rule not to interfere with proceedings pending in the Courts of the District of Columbia, or in the Circuit Courts of the United States, in advance of their final determination.

This was an application by Elverton R. Chapman for leave to file a petition for the writ of *habeas corpus.* Petitioner represented that he was unlawfully restrained of his liberty by the United States marshal for the District of Columbia, and stated : That on June 29, 1894, an indictment was returned against petitioner in the Supreme Court of the District of Columbia, holding a criminal term, based upon section 102 of the Revised Statutes of the United States, upon which he voluntarily surrendered himself into the custody of the court, July 2, 1894, and entered into a recognizance for his appearance as he might thereunto be required, and thereupon petitioner filed a demurrer to the indictment; that October 1, 1894, another indictment was found against petitioner under said section, which indictment was returned as a substitute for and in lieu of the former indictment, and a certified copy whereof was annexed to the petition.

The indictment averred that Chapman was summoned and appeared as a witness before a special committee of the Senate of the United States in relation to a matter of inquiry before said committee, and that he refused to answer questions pertinent to the matter of inquiry referred to such committee..

The petition then alleged that petitioner, on October 11, 1894, filed his demurrer to the last named indictment, together with a note appended thereto stating the grounds of the demurrer; that November 17, 1894, the demurrer was overruled and petitioner required to appear and plead; that afterwards the Court of Appeals of the District of Columbia allowed an appeal from the order of the Supreme Court overruling the

demurrer, and on December 14, 1894, the matter was duly submitted to the Court of Appeals and taken under advisement; that on January 7, 1895, the Court of Appeals gave judgment, affirming the order of the Supreme Court overruling the demurrer and requiring petitioner to plead to the indictment, and the cause was remanded by the Court of Appeals to the Supreme Court to be proceeded in, and is now duly pending in, the last named court.

The petition further stated that, on January 18, 1895, petitioner was surrendered upon his recognizance and committed to the custody of the United States marshal for the District of Columbia, and petitioner charged that his detention was unlawful because in violation of the laws and Constitution of the United States and for want of jurisdiction in the court to make the order of imprisonment.

It was averred that the questions and each of them set forth in the indictment, and which petitioner declined to answer, were questions in regard to the lawful private business of petitioner which he was not bound to answer, and was protected from answering by provisions of the Constitution and laws of the United States; and were questions not authorized by the resolution of the Senate upon which the investigating committee rested its authority; that the conditions under which the questions were asked were not such as authorized the committee to make search into the private affairs of petitioner, nor were they such as authorized or permitted the Senate to demand or compel answers to questions which would disclose the private business of petitioner; that the refusal of petitioner to answer the questions was not a misdemeanor within the true intent and meaning of section 102 of the Revised Statutes; that that section was unconstitutional and void in that it attempted to transfer the power to punish acts constituting contempt of the Houses of Congress, respectively, to the exclusive jurisdiction of the criminal court of the District of Columbia; that if the section was not designed to transfer such jurisdiction to the criminal court, but was designed to add to the power of both Houses to punish for contempt, the power and jurisdiction in the criminal court to

punish the same acts as misdemeanors, then the section was void because in contravention of the Fifth Amendment to the Constitution; that sections 102 and 103 of the Revised Statutes were to be taken together as parts of a single and indivisible scheme, and the provisions of section 102 could not be enforced in disregard of the provisions of section 103 consistently with the intention of Congress, and if section 103 was not capable of being executed because unconstitutional, then section 102 could not be executed; that section 103 was unconstitutional because compelling involuntary answers to questions put by committees of either House of Congress, although the witness might decline to answer on the ground that his testimony or his production of papers might tend to disgrace him or otherwise render him infamous; and that upon these and other grounds petitioner's imprisonment was without any authority of law and in excess of the jurisdiction of the court.

Sections 102, 103, and 104 of the Revised Statutes are as follows:

" SEC. 102. Every person who, having been summoned as a witness by the authority of either House of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of either House of Congress, wilfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars nor less than one hundred dollars, and imprisonment in a common jail for not less than one month nor more than twelve months.

" SEC. 103. No witness is privileged to refuse to testify to any fact, or to produce any paper, respecting which he shall be examined by either House of Congress, or by any committee of either House, upon the ground that his testimony to such fact or his production of such paper may tend to disgrace him or otherwise render him infamous.

" SEC. 104. Whenever a witness summoned as mentioned in section one hundred and two fails to testify, and the facts are reported to either House, the President of the Senate or

the Speaker of the House, as the case may be, shall certify the fact under the seal of the Senate or House to the district attorney for the District of Columbia, whose duty it shall be to bring the matter before the grand jury for their action."

The Court of Appeals held that section 102 was constitutional and valid; that the inquiry directed by the resolution of May 17, 1894, was within the power of the Senate to execute by requiring witnesses to testify; and that the questions propounded to Chapman were pertinent to the subject-matter given in charge to the committee; and was of opinion that the indictment was good and sufficient. 23 Wash. Law Rep. 17.

*Mr. Samuel Shellabarger, Mr. Jeremiah M. Wilson* and *Mr. George F. Edmunds* for the petitioner.

*Mr. Solicitor General* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The general rule is that the writ of *habeas corpus* will not issue unless the court, under whose warrant the petitioner is held, is without jurisdiction; and that it cannot be used to correct errors. *Ex parte Watkins*, 3 Pet. 197; *Ex parte Parks*, 93 U. S. 18; *Ex parte Yarbrough*, 110 U. S. 651; *Ex parte Bigelow*, 113 U. S. 328; *In re Coy*, 127 U. S. 731, 756; *In re Schneider, Petitioner*, 148 U. S. 162. Ordinarily the writ will not lie where there is a remedy by writ of error or appeal, *In re Frederich, Petitioner*, 149 U. S. 70; *In re Tyler*, 149 U. S. 164, 180; *In re Swan*, 150 U. S. 637, 648; yet in rare and exceptional cases it may be issued although such remedy exists. *Ex parte Royall*, 117 U. S. 241; *New York* v. *Eno*, 155 U. S. 89.

We have heretofore decided that this court has no appellate jurisdiction over the judgments of the Supreme Court of the District of Columbia in criminal cases or on *habeas corpus*. *In re Heath, Petitioner*, 144 U. S. 92; *Cross* v. *United States*,

145 U. S. 571; 'Cross v. Burke, 146 U. S. 82. But it is contended that under section 8 of the act of February 9, 1893, 27 Stat. 434, c. 74, establishing a Court of Appeals for the District of Columbia, the judgments of the Supreme Court of the District reviewable in the Court of Appeals may be reviewed ultimately in this court even in criminal cases, where the validity of a statute of, or an authority exercised under, the United States is drawn in question. We do not feel constrained, however, to determine how this may be, as we are of opinion that the application must be denied on another ground.

In *New York* v. *Eno*, 155 U. S. 89, the circumstances under which a court of the United States should, upon *habeas corpus*, discharge one held in custody under the process of a state court were considered, as they had previously been in *Ex parte Royall*, 117 U. S. 241, and the views expressed in the latter case reiterated with approval. It was held that Congress intended to invest the courts of the Union and the justices and judges thereof with power upon writ of *habeas corpus* to restore to liberty any person within their respective jurisdictions held in custody, by whatever authority, in violation of the Constitution or any law or treaty of the United States; that the statute contemplated that cases might arise when the power thus conferred should be exercised during the progress of proceedings instituted in a state court against a prisoner on account of the very matter presented for determination by the writ of *habeas corpus;* but that the statute did not imperatively require the Circuit Court by that writ to wrest the prisoner from the custody of the state officers in advance of his trial in the state court; and that while the Circuit Court had the power to do so and could discharge the accused in advance of his trial, it was not bound in every case to exercise such power immediately upon application being made for the writ. The conclusion was that, in a proper exercise of discretion, the Circuit Court should not discharge the petitioner until the state court had finally acted upon the case, when it could be determined whether the accused, if convicted, should be put to his writ of error, or the question determined on *habeas corpus* whether he was restrained of his liberty in

violation of the Constitution of the United States. These principles were fully discussed in the cases of the appeals of Royall from judgments on *habeas corpus* of the Circuit Court of the United States for the Eastern District of Virginia, 117 U. S. 241, and in addition thereto Royall made an original application to this court for a writ of *habeas corpus*, which was denied upon the grounds stated in the previous cases. *Ex parte Royall*, 117 U. S. 254.

It must be admitted that special reasons of great weight exist why this should be the rule in respect of proceedings in a state court which are not applicable to cases in the courts of the United States. Nevertheless we regard it as a judicious and salutary general rule not to interfere with proceedings pending in the courts of the District of Columbia or in the Circuit Courts in advance of their final determination. In *Ex parte Mirzan*, 119 U. S. 584, it was decided that this court would not issue a writ of *habeas corpus*, even if it had the power, in cases where it might as well be done in the proper Circuit Court, if there were no special circumstances in the case making direct action or intervention by this court necessary or expedient. And in *In re Huntington*, 137 U. S. 63, we applied that rule in the case of a person claiming to be detained by a United States marshal for the Southern District of New York, by virtue of an order purporting to be an order of the Circuit Court of the United States for the District of Colorado. In *In re Lancaster*, 137 U. S. 393, it was held that this court would not interfere where petitioners had been indicted in a Circuit Court of the United States and taken into custody, but had not invoked the action of the Circuit Court upon the sufficiency of the indictment by a motion to quash or otherwise, although the contention was that the matters and things set forth and charged in the indictment did not constitute any offence or offences under the laws of the United States or cognizable in the Circuit Court.

In the case before us, the question as to the jurisdiction of the Supreme Court of the District of Columbia has indeed already been passed upon by that court and also by the Court of Appeals, upon a demurrer to the indictment, but the case

has not gone to final judgment in either court, and what the result of a trial may be cannot be assumed. We are impressed with the conviction that the orderly administration of justice will be better subserved by our declining to exercise appellate jurisdiction in the mode desired until the conclusion of the proceedings. If judgment goes against petitioner and is affirmed by the Court of Appeals and a writ of error lies, that is the proper and better remedy for any cause of complaint he may have. If, on the other hand, a writ of error does not lie to this court, and the Supreme Court of the District was absolutely without jurisdiction, the petitioner may then seek his remedy through application for a writ of *habeas corpus*. We discover no exceptional circumstances which demand our interposition in advance of adjudication by the courts of the District upon the merits of the case before them.

*Leave denied.*

MR. JUSTICE FIELD dissented.

---

*In re* SCHRIVER, Petitioner. Submitted January 22, 1895. Decided February 4, 1895.

THE CHIEF JUSTICE: This is an application for leave to file a petition for *habeas corpus* differing in no material respect from that just considered, and, for the reasons there given, it is denied.

MR. JUSTICE FIELD dissented.

*Mr. A. J. Dittenhoeffer* for the petitioner.