## CHAPMAN *v.* UNITED STATES.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 513. Submitted November 2, 1896. — Decided November 30, 1896.

This court has no jurisdiction to review, on writ of error, a judgment of the Court of Appeals of the District of Columbia in a criminal case, under § 8 of the act of February 9, 1893, c. 74, 27 Stat. 434.

CHAPMAN was indicted in the Supreme Court of the District of Columbia for an alleged violation of section 102 of the Revised Statutes, in refusing to answer certain questions propounded to him by a special committee of the Senate of the United States, appointed to investigate charges in connection with proposed legislation then pending in the Senate. To this indictment the defendant demurred on the ground, among others, that section 102 of the Revised Statutes was unconstitutional, and that, therefore, the court was without jurisdiction in the premises. This demurrer was overruled by the trial court and its judgment thereon affirmed by the Court of Appeals of the District. 5 D. C. App. 122. Defendant was thereupon tried and convicted, and motions for new trial and in arrest of judgment having been made and overruled (the question of the constitutionality of section 102 being raised throughout the proceedings), was sentenced to be imprisoned for one month in jail and to pay a fine of one hundred dollars, which judgment was affirmed on appeal. 24 Wash. Law Rep. 251.

A writ of error from this court was then allowed, 24 Wash. Law Rep. 297, which the United States moved to dismiss.

*Mr. Solicitor General* for the motion submitted on his brief.

*Mr. George F. Edmunds, Mr. Jeremiah M. Wilson* and *Mr. A. A. Hoehling, Jr.,* opposing, submitted on their brief.

I. After the plaintiff in error had been indicted, and before trial was had, he prayed leave of this court to file a petition for a writ of *habeas corpus,* 156 U. S. 211, 218. That application was denied.

In. the case, *In re Belt*, 159 U. S. 95, 100, subsequently decided by this court, in the opinion of the Chief Justice, it is said : " We have heretofore decided that this court .has no appellate jurisdiction over the judgments of the Supreme Court of the District of Columbia in criminal cases, or on *habeas corpus*, but whether or not the judgments of the Supreme Court of the District reviewable in the Court of Appeals may be ultimately reviewed in this court in such cases when the validity of a statute of, or an authority exercised under, the United States is drawn in question, we have as yet not been obliged to determine " : citing, *In re Chapman, Petitioner*, 156 U. S. 211.

Prior to the passage of the act of the 9th of February, 1893, 27 Stat. 434, establishing the Court of Appeals of the District of Columbia, this court had held that it had no jurisdiction to review criminal cases from the Supreme Court of the District. *In re Heath*, 144 U. S. 92 ; *Cross* v. *United States*, 145 U. S. 571. In neither of these cases, however, was jurisdiction sought to be maintained by reason of the fact that there was drawn in question the validity of a statute of, or an authority exercised under, the United States.

Section 8, of said act of February 9, 1893, provides as follows : " Any final judgment or decree of the said Court of Appeals may be reëxamined and affirmed, reversed or modified, by the Supreme Court of the United States, upon writ of error or appeal, in all cases in which the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars, in the same manner and under the same regulation as heretofore provided for in cases of writs of error on judgments or appeals from decrees rendered in the Supreme Court of the District of Columbia ; and also in cases, without regard to the sum or value of the matter in dispute, wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States."

In section 5 of the Judiciary Act of March 3, 1891, 26 Stat. 827, appeals and writs of error are provided for from the District Courts, or from the existing Circuit Courts of the United

States, to this court, in the following cases: "In cases of conviction of a capital or otherwise infamous crime; in any case that involves the construction or application of the Constitution of the United States; in any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority is drawn in question; and in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States."

If, under the law of any State, a citizen thereof is convicted, and it is claimed that the law of such State, under which he is so convicted, is in contravention of the Constitution of the United States, he is entitled to a writ of error for the purpose of having his case reviewed in this court. Therefore, if the contention of the government in the present case is correct and well founded, namely, that no writ of error will lie to the Court of Appeals of the District of Columbia in a case such as the one at bar, then it must result that Congress has discriminated between the said citizens of the said District and the citizens of every State in the Union, because it has provided that every citizen of a State who has been indicted and convicted under a law of the United States which is claimed to be in contravention of the Constitution may have his case reviewed by this court, while a citizen of the District of Columbia (if this contention be correct), indicted and convicted under the same law, may not have his case so reviewed.

Prior to the passage of the act creating the Circuit Courts of Appeals, this court had no appellate jurisdiction in criminal cases arising in the Circuit Courts; but by that act, (enacted in 1891,) jurisdiction was conferred upon this court to review the decisions of said courts in all cases of conviction of a capital or otherwise infamous crime, in any case that involves the construction or application of the Constitution of the United States, and in any case in which the constitutionality of any law of the United States is drawn in question. The cases of *Heath*, of *Cross* and of *Schneider*, did not involve the question of the validity of any law of the United States, as above stated.

Following this Circuit Court of Appeals act, in 1893, the act creating the Court of Appeals of the District of Columbia was passed. The Court of Appeals occupies the same relation to the Supreme Court of the District of Columbia that the Supreme Court of a State occupies to the inferior courts of such State, and it is only reasonable to interpret this act creating the Court of Appeals for the District, so as to give the citizens of the District of Columbia the same rights as to writs of error in criminal cases that are given to the citizens of the States in like cases. As we have above seen, in all cases where the validity of an act of Congress is called in question, a review may be had of the decision of the court below, on writ of error, in this court, and we respectfully submit that, if the language of the statute in question is obscure, for the reasons we have stated it should receive a liberal construction in favor of the citizen.

It seems to us that it must be obvious that Congress did not intend to discriminate against persons accused and convicted of crime in the District of Columbia, which would necessarily result from the contention of the Solicitor General in this case, if sustained.

The importance in principle, in right and in the harmony required in respect of reviewing decisions of all courts established under the authority of the United States, justifies a critical examination and consideration of the various provisions of the statutes on the subject.

From the organization of the government until recently no decision of a United States court, either in the circuits or in the Territories, in a criminal case, could be reviewed on appeal or writ of error by this court.

The language of the law respecting District and Circuit Courts of the United States was literally confined to civil cases. The language of section 1909 of the Revised Statutes, claimed by the learned court below and by the Solicitor General to be the same as that of the District Court of Appeals act of 1893, is, that writs of error and appeals shall be allowed under the same regulations, etc., as from the Circuit Courts where the value of the property or the amount in controversy

exceeds one thousand dollars. Then comes the exception, as follows: "*Except* that a writ of error or appeal shall be allowed to the Supreme Court of the United States upon writs of *habeas corpus.*" Section 1911 provides for writs of error, etc., from Washington Territory — "Where the value of property or the amount in controversy exceeds two thousand dollars; and such writs of error and appeals shall be allowed in all cases where the Constitution of the United States or a treaty thereof, or acts of Congress, are brought in question."

The act of Congress of March 3, 1885, 23 Stat. 443, prohibited any writ of error, etc., to the Supreme Court of the District, and to the Supreme Courts of the Territories, "unless the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars," and then follows the limitations: "That the preceding section shall not apply to any case in which is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of or an authority exercised under the United States; but in all such cases an appeal or writ of error may be brought without regard to the sum or value in dispute."

The plain effect of that act was to leave the law just as it was before, except in respect of the sum involved, with the addition of the new provision. As it regards the District of Columbia, that question of the validity of treaties and statutes, etc., might be reviewed without regard to the sum or value in dispute.

This was the state of the statute law, except in respect to capital cases, at the time of the passage of the act of March 3, 1891, establishing Circuit Courts of Appeals of the United States. That act radically changed the course of jurisprudence in the courts of the United States, in respect of criminal cases, by prescribing a review in this court in all cases of constitutional construction, or the validity of any law or treaty of the United States, etc., thus changing, in the interests of justice, and uniformity and supreme authority of decision, the practice of a century. Before that date the Supreme Court of the District of Columbia and the Circuit Courts of the United States stood on precisely the same ground in respect of the finality of their jurisdiction in criminal cases.

Then came the act of February 9, 1893, establishing the Court of Appeals of the District of Columbia and reducing the Supreme Court of the District to substantially the same relation to the new court as inferior courts in the States, and as the District Courts before the act of 1891 bore to the highest courts of the States, and to the Circuit Courts of the United States. By this act nothing could be taken from the Supreme Court of the District directly to this court, and it put the District Court of Appeals in precisely the same attitude as to the Supreme Court of the District that the Circuit Courts of the United States, before the act of 1891, held in respect to the District Courts of the United States.

Then section 8 of the act of 1893 provided for a review of the judgments of the District Courts of Appeals, "in all causes in which the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars, in the same manner and under the same regulations as heretofore provided for in cases of writs of error, or upon judgments or appeals from decrees rendered in the Supreme Court of the District of Columbia." Then, instead of providing as the principal territorial acts had provided, an *exception* relating to the same class of subjects, it provided in a distinct clause, and affirmatively, as follows: "And *also* in cases, without regard to the sum or value of the matter in dispute, wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States."

It is respectfully and confidently submitted that this language and the construction of the section differ essentially from the previous statute in respect of writs of error, etc., to the Supreme Court of the District of Columbia, and from the acts relating to all the Territories, except Washington. The Washington Act is constructed in the same manner as the section now under consideration, except that it does not contain the word " also."

The words " and also," used together, are those of almost immemorially precise and technical meaning. They are words of legal art, and import not a restriction or qualification of

matter previously stated, but *an affirmative and an additional independent proposition*. They are the literal translation of the words "*ac etiam*," used in ancient and in comparatively modern pleading as importing a distinct movement *and transition from what had been previously declared to a new and independent subject*, capable of standing, and intended to stand, by itself.

The grammatical construction, therefore, of this eighth section of the act of 1893 gives this court appellate jurisdiction in every case decided by the District Court of Appeals in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, without any reference or regard to the previous clause in the section defining and limiting the mere pecuniary jurisdiction of the courts of the District of Columbia — a jurisdiction wider, indeed, than any other court of the United States — and requiring that it should not be exercised in constitutional cases without the same power of review by this court that the act of 1891 had provided with respect of all Circuit Courts of the United States.

It is monstrous to suppose that Congress ever had any other purpose in view, and we repeat that it used the very language and construction of the section precisely adequate to that end.

It may be added that there cannot be a civil suit in which there is not "a sum or value" in dispute. And, therefore, it follows that when the statute declares that neither "sum or value" shall be the test in respect of questions of constitutional consideration, etc., there is nothing to which the authority to review can be applied other than to criminal cases in which such constitutional questions arise. If there had been no money limit to the first clause of the section, no one, we think, would question that the second clause gave appellate jurisdiction to this court in all cases in which constitutional questions, etc., arose. But the second clause stands precisely the same in respect to the first as it would have stood if the first had made no reference to pecuniary amounts, for as we have shown, the clause is *not* one of limitation or qualification, *but of addition and transition*.

This court has never yet decided, even in the case of the former statutes for the District of Columbia or the Territories, that it did not have appellate jurisdiction in criminal cases involving constitutional questions and the like. There is not even an intimation of the character in all the decided cases, excepting a remark of the late Mr. Justice Blatchford, in *Farnsworth* v. *Montana*, 129 U. S. 104, 111. That case showed that the pecuniary limit had not been reached, and it showed that no question of constitutional consideration existed in it. The learned justice, in deciding it, referred to *Watts* v. *Washington*, 91 U. S. 580, and said that the language of the court in that case was *obiter dictum*.

It is submitted, with the sincerest respect to the late justice, that in making that observation he was mistaken. This court in deciding the *Watts case*, through Chief Justice Waite, said, as the fundamental and only ground of the decision, that: "This court can only review the final judgment of the Supreme Court of the Territory of Washington in criminal cases when the Constitution or a statute or treaty of the United States is drawn in question.

"This is a criminal case; but the record does not present for our consideration any question of which we can take jurisdiction. It nowhere appears that the Constitution or any statute or treaty of the United States is in any manner drawn in question."

The foregoing is the whole of the decision. If, then, anything was *obiter* in the decision, it must have been the whole of it. That case was decided in 1875.

*Kurtz* v. *Moffatt*, 115 U. S. 487, decided in 1885, has no application to the present case. All that was held there was that the law did not provide for removing a *habeas corpus* proceeding from the state to the Circuit Court, and that a private citizen had no right to arrest a deserter from the army without warrant. It was a case depending entirely upon whether the statutes for removal of cases applied to *habeas corpus*, a *civil* procedure having no money value concerned in it.

In *Snow* v. *United States*, 118 U. S. 346, 348, decided in

1885, it was held, that the appellate jurisdiction of this court did not exist, because the validity of a statute of the United States, etc., was not drawn in question; and this upon the construction of § 702 of the Revised Statutes, to which we have already referred; and the court expressly said that Utah does not fall within the clause concerning constitutional questions, because the section is in terms limited to Washington alone.

In *In re Schneider*, 148 U. S. 157, decided in 1892, no question of the validity of a statute or of constitutional right was involved, and the application for a writ of error was denied, the court holding that the proceeding in *habeas corpus* below was a *civil* proceeding, and that the pecuniary clause in the statute did not apply.

All these decisions, and others of the same character, were made before the passage of the District Courts of Appeals act of 1893. It must be presumed that Congress was familiar with the course of these decisions when, in defining the jurisdiction of this court by the act of 1893, it reformed the language of former acts, and that it intended thereby to put its appellate jurisdiction on the same footing in respect to the highest court in the District of Columbia, with its almost illimitable jurisdiction, upon the same footing that Congress had provided by the act of 1891, in respect to all the Circuit Courts of the whole country.

II. The present case is one over which this court has jurisdiction, because there is a sum of money in dispute.

The statute under which the plaintiff in error was indicted, tried and convicted is one which provides, in section 1, that, upon conviction, the party shall be punished " by a fine of not more than one thousand dollars nor less than one hundred dollars, and imprisonment of not less than one month nor more than twelve months." There is, therefore, necessarily involved in this case a sum in dispute.

The language of the act, in substance, is, that if the validity of a statute is drawn in question in any case, the court shall have jurisdiction regardless of the amount in question; but in cases where the validity of a statute is not drawn in question, the amount in dispute must be not less than $5000.

Now, it is respectfully submitted that this is a case in which a money value is involved, because the statute is imperative that there shall be a judgment, in case of conviction, for at least $100, and it may be $1000, depending upon the decision of the court in view of the gravity of the offence. This question, so far as we have been able to find, has never been decided by this court.

In the case of *Farnsworth* v. *Montana*, 129 U. S. 104, the punishment inflicted was a fine of $50 and $17.50 costs. The statute under which that case was prosecuted provided that the case could not be reviewed in this court unless the matter in dispute amounted to $5000, and this court, in that case, said:

"The judgment of the Probate Court was imprisonment until the payment of the fine and costs, and, if the fine covered by the judgment of any one of the courts could be called a matter in dispute within the first section of the act of 1885, the pecuniary value involved did not exceed $5000, so that it is plain that the first section of the act of 1885 does not cover the case."

So it appears, in the above-named case, that it was decided solely upon the ground that the amount involved did not reach the statutory limit.

In the case of *Snow* v. *United States*, 118 U. S. 354, the plaintiff in error was convicted, in the Territory of Utah, on indictments found under section 3, of the act of March 22, 1882, for cohabiting with more than one woman, the judgment of the court being imprisonment for six months and a fine of $300. Section 1909 of the Revised Statutes of the United States provides, that writs of error and appeals from the final decisions of the Supreme Court of any one of eight named Territories, of which Utah was one, "shall be allowed to the Supreme Court of the United States in the same manner and under the same regulations as from the Circuit Courts of the United States, where the value of the property or the amount in controversy exceeds $1000."

In the opinion of the court, by Mr. Justice Blatchford, it is said: "In each of the present cases the pecuniary value

involved does not exceed $300, even if the fine could be called a 'matter in dispute,' within the statute."

It will be seen; therefore, that, in each of said, cases, this court did not decide that the imposition of a fine could not be regarded as a matter in dispute capable of being valued in money, but merely decided that, in the cases presented, the amount of the fine did not equal the jurisdictional sum required by the statutes regulating the review upon writ of error. In the case at bar no such difficulty arises, as the statute provides for a review in this court of the cases enumerated "without regard to the sum or value of the matter in dispute."

There is one hundred dollars in amount and value in dispute in this case — just as much and more than it could be in an ordinary civil case, and in connection with it there is the question of the validity of the statute which the court below has said authorized it to exact that sum from the plaintiff in error. This brings the case literally within section 8 of the act of 1893, even upon the contention of the other side in respect of its meaning.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The appellate jurisdiction of this court rests on the acts of Congress, and the question is whether we have jurisdiction to review on writ of error a judgment of the Court of Appeals of the District of Columbia in a criminal case under section 8 of the act of February 9, 1893, c. 74, establishing that court. 27 Stat. 434. And the proper construction of that section is to be arrived at in the light of previous decisions in respect of similar statutory provisions conferring appellate jurisdiction.

Section 8 of the act of February 27, 1801, c. 15, entitled "An act concerning the District of Columbia," 2 Stat. 103, and creating a Circuit Court for the District, provided: "That any final judgment, order or decree in said Circuit Court, wherein the matter in dispute, exclusive of costs, shall exceed the value of one hundred dollars, may be reëxamined and

reversed or affirmed in the Supreme Court of the United States, by writ of error or appeal, which shall be prosecuted in the same manner, under the same regulations, and the same proceedings shall be had therein, as is or shall be provided in the case of writs of error on judgments, or appeals upon orders or decrees, rendered in the Circuit Court of the United States."

In *United States* v. *More*, 3 Cranch, 159, 173 (decided in 1805), it was held that this court had no jurisdiction under that section over the judgments of the Circuit Court of the District in criminal cases, and Chief Justice Marshall said: " On examining the act, 'concerning the District of Columbia,' the court is of opinion, that the appellate jurisdiction, granted by that act, is confined to civil cases. The words, 'matter in dispute,' seem appropriated to civil cases, where the subject in contest has a value beyond the sum mentioned in the act. But, in criminal cases, the question is the guilt or innocence of the accused. And although he may be fined upwards of one hundred dollars, yet that is, in the eye of the law, a punishment for the offence committed, and not the particular object of the suit."

The section, as thus construed, was carried forward in the subsequent legislation on the subject, which is referred to at length and considered in cases hereafter cited, and need not be again reviewed.

The act of March 3, 1885, c. 355, 23 Stat. 443, consists of two sections, reading:

" That no appeal or writ of error shall hereafter be allowed from any judgment or decree in any suit at law or in equity in the Supreme Court of the District of Columbia, or in the Supreme Court of any of the Territories of the United States, unless the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars.

" SEC. 2. That the preceding section shall not apply to any case wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of or an authority exercised under the United States; but in all such cases an appeal or writ of error may be brought without regard to the sum or value in dispute."

We have decided that this court has no jurisdiction to grant a writ of error to review the judgments of the Supreme Court of the District of Columbia in criminal cases either under the judiciary act of March 3, 1891, c. 517, 26 Stat. 826, *In re Heath*, 144 U. S. 92; or under the act of February 6, 1889, c. 113, 25 Stat. 655, *Cross* v. *United States*, 145 U. S. 571; or on *habeas corpus*, *Cross* v. *Burke*, 146 U. S. 82. And although the validity of any patent or copyright, or of a treaty or statute of, or an authority exercised under, the United States, was not drawn in question in those cases, it was distinctly ruled in reaching the conclusions announced that neither of the sections of the act of March 3, 1885, applied to any criminal case; and *Farnsworth* v. *Montana*, 129 U. S. 104; *United States* v. *Sanges*, 144 U. S. 310, and *United States* v. *More*, 3 Cranch, 159, were cited with approval. *Cross* v. *United States*, 145 U. S. 574; *Cross* v. *Burke*, 146 U. S. 87.

In *Farnsworth* v. *Montana*, in which it was claimed that the validity of an authority exercised under the United States was drawn in question, it was held that the second section of the act did not extend to criminal cases, but that both sections applied to cases where there was a matter in dispute measurable by some sum or value in money. The view taken was that the second section contained an exception or limitation carved out of the first section, and that the words, that in the enumerated cases, "an appeal or writ of error may be brought without regard to the sum or value in dispute," clearly implied that in those cases also there must be a pecuniary matter in dispute measurable by some sum or value, though not restricted in amount.

In *United States* v. *Sanges*, referring to *Snow* v. *United States*, 118 U. S. 346, we said: "The question whether the provision of the act of March 3, 1885, c. 355, § 2, authorizing a writ of error from this court to the Supreme Court of any Territory in any case 'in which is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States,' extended to criminal cases, was then left open, but at October term, 1888, it was decided in the negative. *Farnsworth* v. *Montana*, 129 U. S. 104."

And in *Washington & Georgetown Railroad* v. *District of Columbia*, 146 U. S. 227, 231, it was said : " Both sections of the act of March 3, 1885, regulating appeals from the Supreme Court of the District of Columbia, apply to cases where there is a matter in dispute measurable by some sum or value in money. *Farnsworth* v. *Montana*, 129 U. S. 104, 112 ; *Cross* v. *Burke*, 146 U. S. 82. By that act no appeal or writ of error can be allowed from any judgment or decree in any suit at law or in equity in the Supreme Court of the District of Columbia, unless the matter in dispute exclusive of costs shall exceed the sum of · five thousand dollars, except that where the case involves the validity of any patent or copyright, or the validity of a treaty or statute of, or an authority exercised under, the United States, is drawn in question, jurisdiction may be maintained irrespective of the amount of the sum or value in dispute."

*Watts* v. *Washington Territory*, 91 U. S. 580, decided at October term, 1875, is cited as sustaining a different construction, but the point of decision there was that it nowhere appeared that the Constitution or any statute or treaty of the United States was in any manner drawn in question, and the broad language of the opinion was plainly *obiter*, as pointed out in *Farnsworth* v. *Montana.*

The eighth section of the act of February 9, 1893, establishing the Court of Appeals of the District of Columbia, is as follows :

" SEC. 8. That any final judgment or decree of the said Court of Appeals may be reëxamined and affirmed, reversed or modified by the Supreme Court of the United States, upon writ of error or appeal, in all causes in which the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars, in the same manner and under the same regulations as heretofore provided for in cases of writs of error on judgment or appeals from decrees rendered in the Supreme Court of the District of Columbia; and also in cases, without regard to the sum or value of the matter in dispute, wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of

a treaty or statute of or an authority exercised under the United States."

We regard this section and the act of 1885 as the same in their meaning and legal effect. The act of 1885 prohibits appeals or writs of error unless the matter in dispute exceeds the sum of $5000, and provides that the restriction shall not apply to certain enumerated cases, " but that in all such cases an appeal or writ of error shall be brought without regard to the sum or value in dispute."

The act of 1893 allows appeals or writs of error whenever the matter in dispute exceeds the sum of $5000, and also in cases " without regard to the sum or value of the matter in dispute," wherein the validity of any patent or copyright or of a treaty or statute of or an authority exercised under the United States is drawn in question, being the same cases mentioned in the second section of the act of 1885. We think as that section clearly applied to cases where there was a pecuniary matter in dispute, measurable by some sum or value, as has been repeatedly decided, the last clause of section eight of the act of 1893 must receive the same construction. The meaning of both statutes is that in the cases enumerated the limitation on the amount is removed, but both alike refer to cases where there is a pecuniary matter in dispute, measurable by some sum or value, and they alike have no application to criminal cases. The suggestion that because the punishment for conviction by the statute under which plaintiff in error was indicted, tried and convicted embraced a fine, there was therefore a sum of money in dispute, was disposed of by Chief Justice Marshall in *United States* v. *More, supra.* We repeat the language of the Chief Justice: " In criminal cases, the question is of the guilt or innocence of the accused. And although he may be fined upwards of one hundred dollars, yet that is, in the eye of the law, a punishment for the offence committed, and not the particular object of the suit."

It is contended that the words "and also " as used in the section under consideration are words " of legal art," of " almost immemorially precise and technical meaning," and import,

not a restriction of matter previously stated, but a transition from what had been previously declared to a new and independent subject intended to stand by itself.

We do not care to go into the struggle between the courts of King's Bench and Common Pleas on the question of the jurisdiction of the former over civil actions, which led to the curious device of the *ac etiam*, more particularly to avoid the effect of 13 Car. II, 2 Stat. c. 2. It was invented in order to couple with a cause of action over which the Court of King's Bench had jurisdiction, another cause of action, over which, without being joined with the first, the court would not have had jurisdiction. 2 Sellon's Pract. Appendix, 625, 630; Burges on Insolvency, 135, 149.

We are unable to conclude that Congress, which might easily have conferred jurisdiction in plain and explicit language, resorted to this ancient contrivance to effect it.

The argument is pressed that as by section five of the judiciary act of 1891, cases of conviction of capital or otherwise infamous crimes; cases involving the construction or application of the Constitution of the United States; or cases in which the constitutionality of any law of the United States is drawn in question, can be brought to this court directly from the District and Circuit Courts of the United States, therefore this section should be construed as giving the same right of review in the District of Columbia.

But we think the section too plain to admit of this. No mention of the courts of the District of Columbia is made in the act of March 3, 1891, and there is nothing in the eighth section to justify its expansion so as to embrace the provisions of that act. *In re Heath, Petitioner*, 144 U. S. 92, 96.

The writ of error was granted by the Court of Appeals in this case with reluctance, as appears from the opinion of Chief Justice Alvey, in passing upon the application therefor, given in the record, and out of deference to the supposed intimation in *In re Chapman*, 156 U. S. 211, and *In re Belt*, 159 U. S. 95, that it might lie. It is quite possible that the language used in the opinions in those cases was somewhat too cautiously worded, but it was with the purpose, as the question was not

raised for decision, of avoiding rather than expressing any views upon it.

We are of opinion that the writ of error cannot be maintained.

*Writ of error dismissed.*