Ex parte BLAIR. Ex parte PHILLIPS. Ex parte TEMPLETON.

(District Court, S. D. New York. October 16, 1918.)

Nos. M3–292 to M3–294.

1. CONSTITUTIONAL LAW ⊜⟾46(1)—CONSTITUTIONALITY OF ACT—NECESSITY OF DETERMINATION.

It is an almost universal rule of the courts not to decide constitutional questions until the necessity for decision arises in the record before the court.

2. HABEAS CORPUS ⊜⟾27, 30(1)—FUNCTION OF WRIT.

Generally the writ of habeas corpus will not issue, unless the court under whose warrant the petitioner is held is without jurisdiction, and it cannot be used to correct errors.

3. HABEAS CORPUS ⊜⟾32—CONSTITUTIONALITY OF STATUTE.

Petitioners who refused, without invoking the Fifth Amendment, protecting against self-incrimination, to obey a subpœna duces tecum, or to answer questions propounded to them in a grand jury investigation, under Act Cong. June 25, 1910, as amended by Act Aug. 19, 1911, and Act Aug. 23, 1912 (Comp. St. 1916, §§ 188–198), of corrupt practices in a senatorial primary election cannot, having been committed for contempt, secure release on habeas corpus on the ground that the statute was unconstitutional.

⊜⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Applications for habeas corpus by Frank W. Blair, Thomas P. Phillips, and Allan A. Templeton. Applications denied.

Martin W. Littleton, of New York City, for petitioners.

Francis G. Caffey, U. S. Atty., of New York City, S. R. Rush, Sp. Asst. Atty. Gen., of Omaha, Neb., and Oliver E. Pagan, of Washington, D. C., for the United States.

HENRY D. CLAYTON, District Judge. These three cases were argued together; each rests upon the same facts, and each presents the same questions of law.

The facts, and they are not disputed, but appear of record, essential to an understanding of the questions presented, are as follows: Blair, Phillips, and Templeton, residents of the city of Detroit, in the state of Michigan, were each duly served with subpœnas at Detroit, requiring them to appear before the United States grand jury sitting in the Southern district of New York, at New York City. The subpœna to Blair, and the one to Templeton as well, was a subpœna duces tecum, requiring in the case of each of them that they produce before the grand jury certain records of the Truman H. Newberry senatorial committee described in the subpœnas.

The witnesses appeared separately before the grand jury in obedience to the process and were duly sworn. Each witness separately was then asked certain preliminary questions as to his residence, occupation, etc., and each was then asked questions touching the matter then before the grand jury, to wit, an inquiry among other things, concerning supposed violations of section 125 of the United States Criminal Code, Act March 4, 1909, c. 321, 35 Stat. 1111 [Comp. St. 1916, § 10295]), which relates to perjury; and the so-called federal Corrupt Practices Act (Act Cong. June 25, 1910, c. 392, 36 Stat. 822), as amended by Act Aug. 19, 1911, c. 33, 37 Stat. 25, and further amended by Act Aug. 23, 1912, c. 349, 37 Stat. 360 (U. S. Comp. St. 1916, § 188). This act defines political committees, requires the keeping and filing of certain financial statements, limits the amount of money that may be expended by candidates for nomination and election to the offices of Representative and Senator in Congress, forbids certain acts and promises by candidates and committees, and provides punishment for the violation of the act. The act also contains the following provision (section 8):

"Every statement herein required shall be verified by the oath or affirmation of the candidate, taken before an officer authorized to administer oaths; and the depositing of any such statement in a regular postoffice, directed to the clerk of the House of Representatives or to the secretary of the Senate, as the case may be, duly stamped and registered within the time required herein shall be deemed a sufficient filing of any such statement under any of the provisions of this act." Comp. St. 1916, § 195.

The inquiry before the grand jury, and about which the testimony of the witnesses was sought, had to do with the verification in the Southern district of New York, and the filing of reports to the secretary of the United States Senate by Truman H. Newberry, a candi-

date for the Republican nomination to the office of United States Senator at the primary election held in and under the laws of the state of Michigan in August, 1918, which office is to be voted for at the general election in November, 1918. The witnesses were informed that this was the object of the grand jury investigation, that the purpose of the prosecution was not to charge them with any offense, and that, if the answers to the questions tended to incriminate or degrade the witness, the law would not require them to answer.

Each of the witnesses then refused to answer the questions asked concerning the matter under investigation on the grounds set out in a written statement read to and left with the grand jury in each case. This written statement was to the effect that the reason they did not answer the questions was because the grand jury and the court were without any jurisdiction to inquire into the manner and method of the conduct of a campaign in Michigan for a party nomination, through the means of a primary election, for United States Senator; that said federal Corrupt Practices Act as amended is unconstitutional, and that no federal court or federal grand jury in any state has the constitutional authority to conduct an inquiry under said act regarding a primary election for the nomination of a United States Senator; and that they made their statements upon advice of counsel. The witnesses were thereupon each separately asked by counsel for the United States whether they refused to testify for the reason that so to do would incriminate them, to which question each witness replied that he would make no other answer than a reference to the reasons for his refusal as set forth in the written statement read to and left with the grand jury. The witnesses Blair and Templeton also refused, for the same reasons, to produce the documents and papers called for in the subpoenas duces tecum served on them.

On October 10, 1918, the grand jury presented the witnesses to the court, Judge Edward E. Cushman presiding, for contumacy in having refused to answer the questions. The court, after hearing the argument of counsel for the petitioners, including the argument as to the unconstitutionality of the act, and also the argument of counsel for the United States, ordered the witnesses to go again before the grand jury and answer the questions.

On October 11, 1918, the witnesses were called again before the grand jury, and counsel for the government again propounded the questions relating to the matter then before the grand jury. The witnesses each again, for the reasons stated by them when they first appeared before the grand jury, declined to answer the questions or to produce the documents and papers called for in the subpoenas duces tecum. Thereupon the matter and the witnesses were again presented by the grand jury to the court.

The matter was heard by the court, Judge Cushman presiding, and he adjudged the witnesses in contempt for failure to answer, and remanded them to the custody of the United States marshal, to be committed to the Ludlow Street Jail until they should comply with the order of the court directing them to answer the questions asked by the grand jury.

The witnesses each now petition the court for a writ of habeas corpus, and each alleges that he is unlawfully restrained of his liberty, and without due process of law, and in violation of the rights of petitioner secured to him under the Constitution of the United States. Each petitioner alleges that he is restrained solely under the authority of the order of the court of October 11, 1918, committing the petitioner to the custody of the marshal for an alleged contempt in refusing to answer certain questions propounded to him before and in the presence of the grand jury. The petition in each case avers:

"Petitioner is restrained of his liberty solely under and by virtue of said order of commitment and not for any other cause or reason."

Paragraph 11 of each of the petitions alleges:

"On information and belief: That the Congress of the United States has no jurisdiction to enact laws regulating, controlling, or in any manner affecting the holding of primary elections for the nominations by political parties of candidates for the office of United States Senator to be voted for at succeeding general elections to fill said office, or regulating, affecting or controlling in any manner the conduct of candidates for such nomination at said primary elections. That neither the United States grand jury nor the District Court of the United States for the Southern District of New York has any power or authority to inquire into the method or manner of holding primary elections in the state of Michigan or elsewhere, or to inquire into, indict, or try any person for an alleged violation of said act of Congress, hereinbefore described, which attempts to regulate the conduct of candidates for the nomination for the office of United States Senator at such primary elections. That said act of Congress is unconstitutional and void, so far as it relates to primary elections, and that the arrest and detention of the petitioner is without due process of law and in violation of his constitutional rights. That under the facts hereinbefore set out petitioner was not guilty of contempt in refusing to answer the questions asked him before said grand jury, and that said court had no jurisdiction or power to adjudge petitioner guilty of contempt, and said order of commitment is null and void."

[1] The application for the writ coming on to be heard, the United States moved to discharge and dismiss the writ of habeas corpus, and to recommit the petitioners to the custody of the marshal, for the reason and upon the ground that, under the facts and circumstances stated in the petition and shown by the record, said writ, in legal effect, is a writ of error.

Counsel for petitioners has ably and earnestly urged that the act in question is unconstitutional, in so far as it relates to the selection through primary elections of candidates for the office of United States Senator and the office of Representative in Congress, and while it may be said that the government has not made satisfactory answer to his contention, yet this case, as will be seen, does not render it necessary to pass upon that question now. As was said by Mr. Justice Peckham in Baker v. Grice, 169 U. S. 284, 292, 18 Sup. Ct. 323, 326 (42 L. Ed. 748):

"It is a matter of common occurrence—indeed, it is almost the undeviating rule of the courts, both state and federal—not to decide constitutional questions until the necessity for such decision arises in the record before the court."

The question in the instant case goes to the validity of the order adjudging the petitioners in contempt and committing them to jail

for their refusal to testify after having been directed so to do by the court.

[2] The Supreme Court has repeatedly held that the hearing on habeas corpus is not in the nature of a writ of error, nor is it intended as a substitute for the functions of the trial court. Jurisdiction under the writ is confined to determining from the record whether the petitioner is deprived of his liberty without authority of law. Harlan v. McGourin, 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849. As was said by Mr. Chief Justice Fuller, speaking for the Supreme Court in the case of In re Chapman, 156 U. S. 211, 215, 15 Sup. Ct. 331, 332 (39 L. Ed. 401):

"The general rule is that the writ of habeas corpus will not issue unless the court, under whose warrant the petitioner is held, is without jurisdiction; and that it cannot be used to correct errors [citing cases]. Ordinarily the writ will not lie where there is a remedy by writ of error or appeal [citing cases], yet in rare and exceptional cases it may be issued although such remedy exists. Ex parte Royall, 117 U. S. 241 [6 Sup. Ct. 734, 29 L. Ed. 868]; New York v. Eno, 155 U. S. 89 [15 Sup. Ct. 30, 39 L. Ed. 80]."

The case of Henry v. Henkel, 235 U. S. 219, 35 Sup. Ct. 54, 59 L. Ed. 203, decided by the Supreme Court in 1914, appears to the court to be decisive authority, under the circumstances of these cases, that the writs of habeas corpus should not be issued and the petitioners discharged from custody. In that case the petitioner, Henry, was summoned before the committee on banking and currency of the House of Representatives of the United States, which committee, under a resolution of the House, was then investigating the financial affairs and activities of national banks and other corporations. He answered many of the questions asked by the committee, but declined to answer certain other questions, not because the answers would tend to incriminate him, but because he "considered it dishonorable to reveal the names of his customers." He was reported to the House, and that body directed that the facts be laid before the grand jury for the District of Columbia. This was done, and Henry was indicted. He was arrested in New York, and when taken before the United States commissioner demanded an examination, and moved for his discharge upon the ground that the commissioner was without jurisdiction, since it appeared on the face of the complaint that he was not charged with any offense against the United States. The commissioner ordered him held for a removal warrant from the District Judge. Henry then applied to the District Judge for a writ of habeas corpus, and on the hearing introduced all the testimony that had been submitted to the commissioner, and asked for his discharge on grounds similar to those presented to the committing magistrate. The District Judge discharged the writ and held the petitioner. An appeal was taken to the Supreme Court, where the same contentions were made in Henry's behalf, and the insistence was made that the resolution of the House of Representatives did not authorize the inquiry in which Henry refused to testify; that the facts charged did not constitute an offense against the statute, or, if so, that the statute was void. Mr. Justice Lamar, speaking for the court, said (235 U. S. 227, 228, 35 Sup. Ct. 56, 59 L. Ed. 203):

"When a person under arrest applies for discharge on writ of habeas corpus the issue presented is whether he is unlawfully restrained of his liberty. Rev. Stat. § 752 [Comp. St. 1916, § 1280]. But there is no unlawful restraint where he is held under a valid order of commitment, so that in strict logic the inquiry might extend to the legal sufficiency of the order. In view, however, of the nature of the writ and of the character of the detention under a warrant, no hard and fast rule has been announced as to how far the court will go in passing upon questions raised in habeas corpus proceedings. In cases which involve a conflict of jurisdiction between state and federal authorities, or where the treaty rights and obligations of the United States are involved, and in that class of cases pointed out in Ex parte Royall, 117 U. S. 241 [6 Sup. Ct. 734, 29 L. Ed. 868], Ex parte Lange, 18 Wall. 163 [21 L. Ed. 872], New York v. Eno, 155 U. S. 89 [15 Sup. Ct. 30, 39 L. Ed. 80], and In re Loney, 134 U. S. 372 [10 Sup. Ct. 584, 33 L. Ed. 949], the court hearing the application will carefully inquire into any matter involving the legality of the detention and remand or discharge as the facts may require. But, barring such exceptional cases, the general rule is that, on such applications, the hearing should be confined to the single question of jurisdiction and even that will not be decided in every case in which it is raised. For otherwise the 'habeas corpus courts could thereby draw to themselves, in the first instance, the control of all prosecutions in state and federal courts.' To establish a general rule that the courts on habeas corpus, and in advance of trial, should determine every jurisdictional question, would interfere with the administration of the criminal law and afford a means by which, with the existing right of appeal, delay could be secured when the Constitution contemplates that there shall be a speedy trial, both in the interest of the public and as a right to the defendant.

"The question has been before this court in many cases—some on original application and others on writ of error; in proceedings which began after arrest and before commitment; after commitment and before conviction; after conviction and before review. The applications were based on the ground of the insufficiency of the charge, the insufficiency of the evidence, or the unconstitutionality of the statute, state or federal, on which the charge was based. In some of the cases the applicants have advanced the same arguments that are here pressed, including that of the hardship of being taken to a distant state for trial upon an indictment alleged to be void.

"But in all these instances, and notwithstanding the variety of forms in which the question has been presented, the court, with the exceptions named, has uniformly held that the hearing on habeas corpus is not in the nature of a writ of error nor is it intended as a substitute for the functions of the trial court. Manifestly, this is true as to disputed questions of fact, and it is equally so as to disputed matters of law, whether they relate to the sufficiency of the indictment or the validity of the statute on which the charge is based. These and all other controverted matters of law and fact are for the determination of the trial court. If the objections are sustained or if the defendant is acquitted he will be discharged. If they are overruled and he is convicted he has his right of review. Kaizo v. Henry, 211 U. S. 146, 148 [29 Sup. Ct. 41, 56 L. Ed. 125]. The rule is the same whether he is committed for trial in a court within the district or held under a warrant of removal to another state. He cannot, in either case, anticipate the regular course of proceeding by alleging a want of jurisdiction and demanding a ruling thereon in habeas corpus proceedings [citing many cases].

"The last of these decisions (Ex parte Royall, 117 U. S. 241 [6 Sup. Ct. 734, 29 L. Ed. 868]) is particularly in point, not only because of the applicability of its reasoning to the present case, but because of the fact that the writ was there denied even though the statute, on which the charge was based, was ultimately held to be void. Royall v. Virginia, 116 U. S. 572, 579, 583 [6 Sup. Ct. 510, 29 L. Ed. 735]; Same v. Same, 121 U. S. 102, 104 [7 Sup. Ct. 826, 30 L. Ed. 883]; In re Royall, 125 U. S. 696 [8 Sup. Ct. 1392, 31 L. Ed. 855]."

[3] But the present case is even stronger than the Henry Case, because here the question of the constitutionality of the act is sought to

be raised by a witness before the grand jury, and not by a defendant. Nor does the witness invoke the protection of the Fifth Amendment, which declares that "no person   *   *   *   shall be compelled in any criminal case to be a witness against himself." Unless the testimony sought to be elicited from the witness would tend to incriminate him and expose him to prosecution, he must answer the questions propounded. Hale v. Henkel, 201 U. S. 43, 66, 26 Sup. Ct. 370, 50 L. Ed. 652. Certainly, under the facts of these cases, the petitioners, the witnesses before the grand jury, cannot, as the sole ground for their refusal to answer the questions, be heard to say, after they have been advised of their rights and ordered by the court to answer the questions, in justification of their failure to answer, that they had been advised that the act, violations of which were being investigated by the grand jury, is unconstitutional. They can only justify their refusal to answer by showing that the answers would incriminate them. As was said by Mr. Justice McKenna in Nelson v. United States, 201 U. S. 92, 115, 26 Sup. Ct. 358, 365 (50 L. Ed. 673):

"These writs of error are not prosecuted by the parties in the original suit, but by witnesses, to review a judgment of contempt against them for disobeying orders to testify. Being witnesses merely, it is not open to them to make objections to the testimony. The tendency or effect of the testimony   *   *   *   is no concern of theirs. The basis of their privilege is different from that and entirely personal.   *   *   *"

That is, they are protected against self-incrimination. It cannot be doubted that the decision of the Supreme Court in the Nelson Case would have been the same, had the witnesses based their refusal to testify on the ground of the unconstitutionality of the statute under which the investigation was being had.

It is not alleged or claimed that there is any irregularity in the organization of the grand jury, and its legality is not questioned.

Here we have a legal grand jury, proceeding in a lawful and orderly manner to make certain investigations. Witnesses are legally summoned, appear, and are duly sworn. They are advised as to the matter under investigation, the charge, and they are advised of their right to refuse to answer if the answers would tend to incriminate them. They do not claim any such privilege. The grand jury has presented them; the court has heard the matter and ordered that they testify; they have again refused to testify for the same reasons, and were committed for a contempt. Under these facts there can be no doubt that the order of commitment is valid, and that the petitioners are not unlawfully restrained of their liberty.

It may not be inappropriate to say that the court does not doubt the statement made in the argument that the witnesses are reputable bankers and business men, and that to require them to bring to New York from Detroit, Mich., where they reside, the numerous books and papers called for by the subpœnas duces tecum, would be to impose great hardship upon them. But this objection relates to the matter of inconvenience and hardship, to the wisdom or unwisdom of the acts of Congress having to do with the regulation of primary elections under the laws of a state. That the act of Congress may visit inconvenience and hardship upon the citizens, and that the act of Congress may be

unwise, suggest matters not to be dealt with by the courts. And, as I have held, the constitutionality of the act of Congress cannot be challenged in this proceeding. I may say, also, that it is not my province to make the law of habeas corpus. I cannot add to nor can I subtract from it. It is my duty to declare the law governing this trial as I find it.

It results, from what has been said, that the writ of habeas corpus in each case must be dismissed and discharged, and each petitioner be remanded to the custody of the marshal; and such order will accordingly be entered.