# NEW YORK *v.* ENO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 602. Argued and submitted October 17, 1894. — Decided October 29, 1894.

Whether an offence described in an indictment in a state court is an offence against the laws of that State and punishable thereunder, or whether it is made by Federal statutes an offence against the United States, exclusively cognizable by their courts, and whether the same act may be an offence against both national and state governments, punishable in the tribunals of each, without infringing upon the constitutional guaranty against being twice put in jeopardy of limb for the same offence, are questions which a state court of original jurisdiction is competent to decide in the first instance; and, (its obligation to render such decision as will give full effect to the supreme law of the land, and protect any right secured by it to the accused, being the same that rests upon the courts of the United States,) the latter, if applied to for a writ of *habeas corpus* in

such case, should decline to issue it unless it also appears that the case is one of urgency.

*Ex parte Royall*, 117 U. S. 241, followed, and distinguished from *In re Loney*, 134 U. S. 372.

The proper time, in such case, to invoke the jurisdiction of this court is after the claim of the accused of immunity from prosecution in the state court has been passed upon by the highest court of the State adversely to him.

THE case is stated in the opinion.

*Mr. John D. Lindsay* for appellants. *Mr. John R. Fellows* was with him on the brief.

*Mr. George Bliss* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The appellee presented to the court below his petition for a writ of *habeas corpus*, alleging that he was restrained of his liberty by the warden of the city prison in New York city; that he had not been committed and was not detained by virtue of any judgment, decree, final order, or process; that the cause or pretence of such restraint was certain bench warrants issued upon indictments against him in the Court of General Sessions of the Peace of the city and county of New York; and that those indictments, copies of which are exhibited with the petition, charge him with the commission of certain offences over which that court " has not and never has had jurisdiction." The relief asked was that the petitioner be discharged from the custody of the state authorities.

The indictments referred to were five in number and were based upon the Penal Code of New York, which, among other things, declares any person guilty of forgery in the second degree and punishable by imprisonment for a term not exceeding ten years who, with intent to defraud, forges an entry made in any book of records or accounts kept by a corporation doing business within the State, or in any account kept by such a corporation, whereby any pecuniary obligation, claim, or credit is or purports to be created, increased, diminished,

discharged or in any manner affected; and any person guilty. of forgery in the third degree and punishable by imprisonment for not more than five years, who, with intent to defraud or conceal any larceny or misappropriation of any money or property, alters, erases, obliterates, or destroys an account, book of accounts, record or writing, belonging to, or appertaining to the business of a corporation, association, public office or officer, partnership or individual; or makes a false entry in any such account or book of accounts; or wilfully omits to make true entry of any material particular in any such account or book of accounts, made, written, or kept by him or under his direction. Penal Code, New York, §§ 511, 515, 524, 525.

In some of the indictments the offence is charged to have been committed by Eno in 1883; in the others, in the year 1884.

Each indictment alleges that the offence described was committed by the accused while he was president of the Second National Bank in the city of New York. It also appears from the indictments that the alleged forgeries consisted in the making of certain false entries in the books and accounts of that bank with intent to defraud and to conceal the misappropriation of its moneys.

By the Revised Statutes of the United States it is provided:

" Sec. 563. The District Courts shall have jurisdiction as follows: First. Of all crimes and offences cognizable under the authority of the United States, committed within their respective districts, or upon the high seas, the punishment of which is not capital, except in the cases mentioned in section fifty-four hundred and twelve, Title ' CRIMES.' "

" Sec. 629. The Circuit Courts have original jurisdiction as follows: . . . Twentieth. Exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where it is or may be otherwise provided by law, and concurrent jurisdiction with the District Courts of crimes and offences cognizable therein."

" Sec. 711. The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter men-

tioned shall be exclusive of the courts of the several States : First. Of all crimes and offences cognizable under the authority of the United States.".

By section 5209, Title, National Banks, it is provided that ." every president, director, cashier, teller, clerk or agent of any association who embezzles, abstracts or wilfully misapplies any of the moneys, funds or credits of the association ; . . . or who makes any false entry in any book, report or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association ; and every person who with like intent aids or abets any officer, clerk or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

"§ 5328. Nothing in this Title [Crimes] shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

The Circuit Court held that the several offences for which the defendant was indicted were cognizable under the authority of the United States, and that the jurisdiction vested in the courts of the United States to punish them was exclusive of the courts of the State ; and for that reason it was adjudged that the accused was restrained of his liberty in violation of the Constitution and laws of the United States. He was consequently discharged from custody. The court in its opinion said that " if any serious doubt were entertained as to the want of jurisdiction of the Court of General Sessions of the city of New York and the consequent want of authority to retain the petitioner in custody, such a disposition of the present proceeding would be made as would permit that question to be raised, in the event of a conviction upon the indictment, after a trial."

. The circumstances under which a court of the United States is at liberty upon *habeas corpus* to discharge one held in custody under the process of a state court was considered in *Ex*

*parte Royall,* 117 U. S. 241, 251, 252. Royall was charged by indictments in one of the courts of Virginia with having violated certain statutes of that Commonwealth. Being held in custody by the state authorities for trial he presented petitions for *habeas corpus* in the Circuit Court of the United States for the Eastern District of Virginia and prayed to be discharged upon the ground that the statutes under which he had been indicted were repugnant to the Constitution of the United States and, consequently, that he was restrained of his liberty in violation of that instrument. Rev. Stat. §§ 751, 752, 753, 754, 755, 761, 764; Act of March 3, 1885, c. 353, 23 Stat. 437. The petitions were dismissed, and the cases were brought by appeal to this court.

This court held that Congress intended to invest the courts of the Union and the justices and judges thereof with power, upon writ of *habeas corpus,* to restore to liberty any person within their respective jurisdictions who is held in custody, by whatever authority, in violation of the Constitution or any law or treaty of the United States; that the statute contemplated that cases might arise when the power thus conferred should be exercised during the progress of proceedings instituted against the petitioner in a state court, or by or under the authority of a State, on account of the very matter presented for determination by the writ of *habeas corpus.* But it was adjudged that the statute did not imperatively require the Circuit Court by writ of *habeas corpus* to wrest the petitioner from the custody of the state officers in advance of his trial in the state court; that while the Circuit Court of the United States has the power to do so, and could discharge the accused in advance of his trial, if he be restrained of his liberty in violation of the National Constitution, it is not bound in every case to exercise such power immediately upon application being made for the writ.

"We cannot suppose," the court said, "that Congress intended to compel those courts by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits where the accused claims

that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States; or of an order, process, or decree of a court or judge thereof; or where, being a subject or citizen of a foreign state, and domiciled therein, he is in custody, under like authority, for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations; in such and like cases of urgency, involving the authority and operations of the General Government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of *habeas corpus* and discharged prisoners who were held in custody under state authority. So, also, when they are in the custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses. The present cases involve no such considerations. Nor do their circumstances, as detailed in the petitions, suggest any reason why the state court of original jurisdiction may not, without interference upon the part of the courts of the United States, pass upon the question which is raised as to the constitutionality of the statutes under which the appellant is indicted. The Circuit Court was not at liberty, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is

required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the Constitution and laws of the United States."

Again in the same case : " That these salutary principles may have full operation, and in harmony with what we suppose was the intention of Congress in the enactments in question, this court holds that where a person is in custody under process from a state court of original jurisdiction, for an alleged offence against the laws of such State, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court has a discretion, whether it will discharge him upon *habeas corpus* in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the Circuit Court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the State, or whether it will proceed, by writ of *habeas corpus*, summarily to determine whether the petitioner is restrained of his liberty in violation of the Constitution of the United States." See also *Taylor* v. *Carryl*, 20 How. 583, 595, and *Covell* v. *Heyman*, 111 U. S. 176, 182. Of course, the discretion here referred to is a legal discretion to be controlled in its exercise by such principles as are applicable to the particular case in hand.

In addition to the petitions presented to the Circuit Court of the United States, Royall made an original application to this court for a writ of *habeas corpus* based upon the same facts as those set forth in the other petitions. The application was denied upon the grounds stated in the previous cases. *Ex parte Royall*, 117 U. S. 254.

At the same term of this court, *Ex parte Fonda*, 117 U. S. 516, 518, was determined. That was an original application to this court for a writ of *habeas corpus* by one who was a clerk in a national bank, and who alleged in his petition that

he had been convicted in one of the courts of Michigan under a statute of that State, and sentenced to imprisonment for having embezzled the funds of that banking association. The principal ground upon which he asked for a writ of *habeas corpus* and for his discharge from custody was that the offence for which he was tried was covered by the statutes of the United States, and was therefore exclusively cognizable by the Federal courts. This court denied the application upon the authority of *Ex parte Royall*, observing that no reason had been suggested why the Supreme Court of the State might not review the judgment of the inferior state court upon the question as to the application of the statute under which the conviction was had to embezzlement by the servants and clerks of national banks, nor why it should not be permitted to do so without interference by the courts of the United States; that the question appeared to be one which, if properly presented by the record, might be reviewed in this court after a decision by the Supreme Court of State adverse to the petitioner. The judgment of conviction in that case was subsequently reviewed in the Supreme Court of Michigan, and that court held that jurisdiction of the offence charged against Fonda was exclusive in the Federal court. *People* v. *Fonda*, 62 Michigan, 401.

The rule laid down in the cases in this court, above cited, has been recognized in *In re Duncan*, 139 U. S. 449, 454; *In re Wood*, 140 U. S. 278, 289; *Cook* v. *Hart*, 146 U. S. 183, 194; and *In re Frederick*, 149 U. S. 70, 75.

It may be well to refer to the case of *In re Loney*, 134 U. S. 372, 375. It will be observed that this court in *Ex parte Royall* recognized certain cases as constituting exceptions to the general rule — among which are cases of urgency, involving the authority and operations of the general government. Loney's case was of that class. It appeared from the record that he was duly summoned to give his deposition in a contested election case pending in the House of Representatives of the Congress of the United States — a summons he was obliged to obey, unless prevented by sickness or unavoidable accident, under the penalty of forfeiting a named sum to the

party at whose instance he was summoned, and of becoming subject to fine and imprisonment, Rev. Stat. § 116 ; that he appeared before a notary public in obedience to such summons and proceeded to give his deposition ; and that while in the office of an attorney for the purpose of completing his testimony, he was arrested under a warrant issued by a justice of the peace and based upon the affidavit of one of the parties to the contested election case charging him with wilful perjury committed in his deposition.

Having been arrested under that warrant, he sued out a writ of *habeas corpus* from the Circuit Court of the United States upon the ground that he was restrained of his liberty in violation of the Constitution of the United States. That court, in advance of any trial in the state court for the offence charged against Loney, adjudged that the offence was punishable only under section 5392 of the Revised Statutes, and was exclusively cognizable by the courts of the United States. He was discharged, and the judgment was affirmed by this court.

It is clear from this statement that that case was one of urgency, involving in a substantial sense the authority and operations of the general government. The obvious effect of Loney's arrest, under the circumstances disclosed, was to embarrass one of the parties in the contested election case in obtaining evidence in his behalf, intimidate witnesses whom he might desire to introduce, and delay the preparation of the case for final determination by the House of Representatives. This court, therefore, said : "It is essential to the impartial and efficient administration of justice in the tribunals of the nation, that witnesses should be able to testify freely before them, unrestrained by legislation of the State, or by fear of punishment in the state courts. The administration of justice in the national tribunals would be greatly embarrassed and impeded if a witness testifying before a court of the United States, or upon a contested election of a member of Congress, were liable to prosecution and punishment in the courts of the State upon a charge of perjury, preferred by a disappointed suitor or contestant, or instigated by local passion or prejudice."

Whether the offences described in the indictments against Eno are offences against the State of New York and punishable under its laws, or are made by existing statutes offences also against the United States and are exclusively cognizable by courts of the United States; and whether the same acts, upon the part of the accused, may be offences against both the National and State governments and punishable in the judicial tribunals of each government, without infringing upon the constitutional guaranty against being twice put in jeopardy of limb for the same offence; these are questions which the state court of original jurisdiction is competent to decide in the first instance; and its obligation to render such decision as will give full effect to the supreme law of the land and protect any right secured by it to the accused is the same that rests upon the courts of the United States. When the claim of the accused of immunity from prosecution in a state court for the offences charged against him has been passed upon by the highest court of New York in which it can be determined, he may then, if the final judgment of that court be adverse to him, invoke the jurisdiction of this court for his protection in respect of any Federal right distinctly asserted by him, but which may be denied by such judgment.

Without considering the merits of the several questions discussed by counsel, we are of opinion that the Circuit Court erred in granting the prayer of the accused. He should not have been discharged from the custody of the state authorities, especially as he does not appear to have been under indictment in any court of the United States for the offences alleged to have been committed by him.

*The judgment is reversed with directions to dismiss the writ of habeas corpus, and to remand the accused to the custody of the proper state authorities.*

Mr. Justice Field, with whom concurred Mr. Justice Shiras, dissenting.

I am unable to agree with the majority of the court in the reversal of the judgment of the Circuit Court of the United

States directing the dismissal of proceedings against the defendant upon the indictments against him found in the state court of New York.

The 711th section of the Revised Statutes provides that the courts of the United States shall have jurisdiction exclusive of the courts of the several States of all crimes and offences cognizable under the authority of the United States; and section 5209 of the Revised Statutes, relating to national banks, provides that "every president, director, cashier, teller, clerk or agent of any association who embezzles, abstracts or wilfully misapplies any of the moneys, funds or credits of the association ; . . . or who makes any false entry in any book, report or statement of the association, with intent in either case to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive an officer of an association, or any agent appointed to examine the affairs of any such association ; and every person who with like intent aids or abets any officer, clerk or agent in violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten." The Circuit Court was thus cognizable, under the authority of the United States, of the several offences for which the defendant was indicted ; and the jurisdiction vested in the court of the United States was exclusive of all jurisdiction of the offences in the state courts. It would, therefore, subserve no useful purpose to proceed with the cases in the state court and thus ascertain what that court might have done or would have done had it possessed jurisdiction. Until its jurisdiction was established, its determination, either one way or the other, would be only an idle proceeding. It could not, under any circumstances, take cognizance of the cases charged against the defendant, and hold him under them. He was, therefore, entitled to his discharge whenever the matter was properly brought to the attention of the Federal court.