## UNITED STATES ex rel. SCOTT v. McALEESE.

(Circuit Court of Appeals, Third Circuit. April 20, 1899.)

No. 34, March Term.

HABEAS CORPUS — FEDERAL QUESTION — JURISDICTION OF STATE COURTS— COMITY.

Where a debtor was arrested on process issuing from a state court on a charge of having violated a penal statute of the state against fraudulent insolvency, and afterwards, on petition of his creditors in the proper federal court, was adjudged bankrupt, and the state court, on hearing, then committed him for trial, and he thereupon applied to the United States circuit court for his release on habeas corpus, on the ground that the state statute was superseded by the bankruptcy law, *held*, that the state courts were competent to decide the federal question thus raised, and that, no circumstances of special urgency being shown, the federal courts should not assume its determination until the prisoner had exhausted his remedy in the state courts.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

The relator, J. McD. Scott, sued out a writ of habeas corpus in the circuit court, directed to John McAleese, as warden of the prison of Allegheny county, Pa., alleging that he was unlawfully restrained of his liberty by the respondent under certain commitments from the court of common pleas of said county. From an order of the circuit court discharging the writ and remanding the prisoner, the latter appeals.

J. S. Ferguson, for appellant.

W. A. Blakeley and W. A. Way, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and McPHERSON, District Judge.

McPHERSON, District Judge. The defendant is the warden of the Allegheny county prison, and holds the appellant in custody by virtue of three commitments. One is for contempt of court in refusing to answer certain questions put to the appellant before a referee in bankruptcy; and as this commitment is formally unobjectionable, and has not been successfully attacked upon any ground appearing on the record, it would of itself support a judgment of affirmance. But for reasons that are satisfactory to us, although they need not be set out in this opinion, we have no doubt that the commitment for contempt should not be regarded as an existing process, and accordingly we shall treat it as furnishing no ground for the relator's detention.

It remains to consider the other two commitments. Concerning these the following facts are undisputed: The appellant was a merchant doing business in the city of Pittsburg. On October 12, 1898, he made an assignment for the benefit of creditors; and shortly afterwards, in the same month, several creditors proceeded against him by petitions for warrants of arrest under the Pennsylvania statute of July 12, 1842 (P. L. 339). The petitions averred that the relator had violated section 3 of the statute in certain particulars, and accordingly warrants of arrest were duly issued by a judge of the court of com-

mon pleas of Allegheny county. During the month of November, and before hearings were had under the warrants, proceedings were begun in the district court of the United States for the Western district of Pennsylvania, charging the relator with involuntary bankruptcy, and upon these petitions he was adjudged a bankrupt on December 3d. Afterwards, in January, 1899, hearings were had by the state judge under the warrants of arrest; and, as a result of the action taken thereon (without stopping to detail the proceedings, step by step), the court of common pleas of Allegheny county found, as facts, that "there is just ground to believe that the said J. McD. Scott has concealed money, goods, building materials, plumbing materials, books, and other valuable articles, being part of his estate and effects; and that he has colluded and contrived with other persons for such concealment; and that he has conveyed property to other persons for the use of himself, his family and friends, with the expectation of receiving future benefit to himself of them, and with intent to defraud his creditors." The consequence of this finding was that the court committed the relator for trial upon the charge of fraudulent insolvency. After the hearing, the judge issuing the warrants was also satisfied that the relator had fraudulently contracted certain debts, and had concealed his property with intent to defraud his creditors; and upon this ground he sent the defendant to prison under a separate commitment, there to remain "until he shall be discharged by due process of law." These are the two commitments to be considered. They both conform to the Pennsylvania statute, and are formally regular in every respect. The relator asserts, however, that the statutory provisions upon which they rest have been superseded by the bankrupt law of 1898, and that henceforth proceedings to punish fraudulent insolvency cannot be pursued in the Pennsylvania courts. Insisting upon these objections, he sued out the writ of habeas corpus now before us, but failed to convince the court that he should obtain his liberty. The pending appeal is from the order of the circuit court discharging the writ and remanding the prisoner.

The relator's objections raise a federal question of which the circuit court had jurisdiction, and which might have been considered by that tribunal if the learned judge had seen proper to entertain it. He may, indeed, have considered and decided it, but, as he filed no opinion, we are unable to determine by what reason he was moved to enter the decision now under review. We have before us merely his judgment, and, if for any reason we find the judgment to be correct, our duty is to affirm it. We believe it to be correct, upon the sufficient ground that the state courts are competent to deal with the federal question already stated, and that no circumstances are shown requiring the courts of the United States to take the controversy into their own hands.

No doubt, the question is important; for since the bankrupt act is not as wide in its scope as the Pennsylvania statute of 1842, and the related statute of 1836, it is obvious that, if the relator's contention be sound, offenses now condemned, and properly condemned, by the state law, will escape punishment. But, while the importance of the question must be conceded, we are nevertheless constrained to hold

93 F.—42

that the point should not be determined upon this appeal. The relator's remedy in the state courts should first be pursued, and, if he fails to enforce there whatever right he may possess under the federal law, he may safely rely upon liberation at the hands of the courts of the United States. The tribunals of Pennsylvania are as much bound, and we believe them to be as willing, as are the federal courts, to respect and enforce a right resting upon a law of the United States; and, for the present, we are bound to act upon the presumption that the relator will receive as complete protection at their hands as he would receive at ours. As the facts appear, we must follow the rule of policy that requires the courts of the United States ordinarily to defer action in a case such as this until the state courts have had an opportunity to hear and decide the federal question. The rule is thus expressed in Ex parte Royall, 117 U. S. 254, 6 Sup. Ct. 742:

"Where a person is in custody under process from a state court of original jurisdiction, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States, the circuit court has a discretion whether it will discharge him upon habeas corpus, in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the circuit court has still a discretion whether, under the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the state, or whether it will proceed by writ of habeas corpus summarily to determine whether the petitioner is restrained of his liberty in violation of the constitution of the United States."

And in Whitten v. Tomlinson, 160 U. S. 241, 16 Sup. Ct. 297, the court say:

"In cases of urgency, such as those of prisoners in custody, by authority of a state, for an act done, or omitted to be done, in pursuance of a law of the United States, or of an order or process of a court of the United States, or otherwise involving the authority and operations of the general government, or its relations to foreign nations, the courts of the United States should interpose by writ of habeas corpus. * * * But, except in such peculiar and urgent cases, the courts of the United States will not discharge the prisoner by habeas corpus in advance of a final determination of his case in the courts of the state, and, even after such final determination in those courts, will generally leave the petitioner to the usual and orderly course of proceeding by writ of error from this court."

Other cases are Ex parte Fonda, 117 U. S. 516, 6 Sup. Ct. 848; In re Duncan, 139 U. S. 449, 11 Sup. Ct. 449; New York v. Eno, 155 U. S. 89, 15 Sup. Ct. 30; and Fitts v. McGhee (decided January 3, 1899) 19 Sup. Ct. 269. The recent decision in Ohio v. Thomas (delivered February 27, 1899) Id. 453, upholds a recognized exception to the rule.

In obedience to these authorities, we are of opinion that the discretion of the circuit court was properly exercised in refusing to discharge the relator from custody, and accordingly the order of that court is now affirmed.