IN THE MATTER OF THE PETITION OF WILLIAM H. MARSHALL, for a writ of *habeas corpus*.

DECIDED: OCTOBER 23, 1900.

1. Upon an application for a writ of *habeas corpus* on the ground that the petitioner is deprived of his liberty contrary to the Fifth and Sixth Amendments to the Constitution of the United States, in that he had been convicted of an infamous crime without the indictment or presentment of a Grand Jury and by a verdict of less than twelve jurors, where it appeared that after the annexation of Hawaii to the United States and before the 14th day of June, 1900 (when the Act of Congress for the government of the Territory of Hawaii went into effect), the petitioner was con-

.victed in the Circuit Court of the Territory of the offense of publishing a libel in the first degree by the verdict of nine out of twelve jurors, under Section 1345 of the Civil Laws of Hawaii and sentenced to hard labor for six months under Section 305 of the Penal Laws of Hawaii; and where by Chapter 1, p. 52, Section 3 of the said Penal Laws it is provided that "felonies or crimes mean such offenses as are punishable with death or imprisonment for a longer period than two years or by the forfeiture of any civil or political right * * *·"; and where it is further provided by Section 304 of the said Penal Laws of Hawaii that the degree of the libel shall be found by the jury, the court or "the magistrate authorized to decide on the facts," Section 584 of the said Penal Laws giving the District Magistrate jurisdiction for the "prosecution, trial and sentence of any person charged with * * * any misdemeanors * * * ."

*Held,* that the offense whereof the petitioner was convicted and sentenced was a misdemeanor under the laws of Hawaii, and was not an infamous crime within the meaning of the Fifth Amendment to the Constitution of the United States.

2. The Sixth Amendment to the Constitution of the United States applies only to trials of offenses which are triable by what is known as a common law jury, and are above the grade of misdemeanors, which latter offenses are peculiarly within the jurisdiction of magistrates sitting alone, and do not necessarily require a jury.

3. The petitioner not having been accused of an infamous crime, had no constitutional right to a presentment or indictment by a Grand Jury under the Fifth Amendment to the Constitution of the United States.

4. A verdict of a jury of nine out of twelve jurors was authorized by the law of Hawaii, which law in respect to this class of cases was not repealed until June 14, 1900, and after the proceedings instituted in this matter.

5. While the United States District Court has discretion to summarily discharge on *habeas corpus* any person restrained of his liberty under a judgment of a territorial court, yet it is only in extreme cases that the District Court will exercise such discretion; but will generally leave the petitioner to his remedy by writ of error from the Supreme Court of the United States.

6. Where no Federal question is presented for the consideration of the United States Court on an application for a writ of *habeas corpus,* said Court has no jurisdiction to entertain the writ.

## HABEAS CORPUS.

*J. T. De Bolt,* attorney for petitioner.

*George D. Gear, amicus curiae,* (for petitioner.)

*E. P. Dole,* Attorney General, for the Territory of Hawaii.

*John C. Baird,* U. S. District Attorney, for the Territory of Hawaii.

*A. S. Hartwell, W. O. Smith* and *Abraham Lewis, Jr.* amici curiae (for respondent.)

ESTEE, J.   The petitioner, William H. Marshall, filed his petition for a writ of habeas corpus on October 11th, 1900, setting up the following facts:

That he is a citizen of the United States and of the Territory of Hawaii; and that he is now and since the 9th day of October, 1900, has been unlawfully restrained of his liberty and imprisoned by one Arthur M. Brown, the High Sheriff of the Territory of Hawaii, and that such imprisonment "is illegal and in violation of the Constitution of the United States of America;" that the illegality therof consists in this, to-wit: that on the 18th day of May, A. D. 1900, the petitioner was put to his trial in a criminal case "in the Circuit Court of the First Judicial Circuit, Hawaiian Islands, wherein the Republic of Hawaii was plaintiff and said William H. Marshall was defendant, he being charged with the offense of publishing a libel in the first degree in Honolulu, Island of Oahu, Hawaiian Islands, on or about August 27th, 1899."

The character of the pleading upon which he was so charged is not set forth in the petition but it is alleged that he was put upon his trial "without a presentment or indictment by a Grand Jury, contrary to the Fifth Amendment of the Constitution of the United States," and that the offense charged is "an infamous crime;" that upon the resulting trial, a verdict was returned by nine members of the jury, three jurors dissenting therefrom, finding the petitioner "guilty of libel in the first degree," which verdict it is alleged "is contrary to the Sixth Amendment to the Constitution of the United States;" that on the 18th day of May, 1900, judgment was rendered upon said verdict and the said Circuit Court sentenced the petitioner to imprisonment "at hard

labor for the term of six months;" the petitioner taking the proper exceptions. The several steps followed in taking the case to the Supreme Court of the Territory of Hawaii on appeal are recited, concluding with the statement that "the said Supreme Court of the Territory of Hawaii in said case on the 9th day of October, A. D. 1900, rendered its decision in said cause overruling said exceptions and remanding the defendant to prison."

It is further set forth that the cause or pretence of said imprisonment is "by virtue of a certain void and illegal process issued out of the said Circuit Court  *  *  *  to-wit: a certain alleged mittimus based upon said void and illegal charge, verdict and judgment, whereby the said High Sheriff was and is ordered to take petitioner into custody and to cause the said sentence and judgment to be executed."

The petition concludes with the usual prayer for the writ of habeas corpus to issue. A writ was issued, returnable to this Court on October 18th, 1900, at 10 o'clock a. m., at which time the body of the petitioner was produced in Court and respondent filed his return to the writ. Briefly, respondent justifies by showing "that the said William H. Marshall is now and has been since the 9th day of October, A. D. 1900, detained and confined in the Oahu jail under and by virtue of the authority of a certain mittimus to the said High Sheriff directed," a copy of which is attached to and made a part of the said return.

It was admitted on the argument by all the counsel engaged therein both for petitioner and respondent, that libel in the first degree, the offense charged against the petitioner, was a misdemeanor under the penal statutes of the Territory of Hawaii, and that petitioner was not charged or convicted of "an infamous crime."

The petitioner bases his claim for his discharge under the writ of habeas corpus applied for, upon the ground that he was tried, convicted and sentenced "without a presentment or in-

dictment by a grand jury;" that he was found guilty by a ver-
dict of nine out of a jury of twelve; that the offense charged
against him was "an infamous crime;" and that the whole pro-
ceeding of the territorial courts was in violation of and contrary
to the rights secured to him by the Fifth and Sixth Amendments
to the Constitution of the United States.

The question presented is: Can this Court, except in very
rare and extreme cases, review on habeas corpus the verdict and
judgment of the highest territorial Court of Hawaii in a crim-
inal case wherein a constitutional question is claimed to be
involved, and overrule the action of that Court?

From the date of the passage of the Judiciary Act of 1867
until now, the Supreme Court of the United States, while always
holding that a United States District or Circuit Court had the
power in extreme cases to summarily discharge a party from
custody who is restrained of his liberty in violation of the Con-
stitution of the United States, yet the same Court has uniformly
held that except in the most extreme cases, the true course for
the petitioner was to sue out a writ of error from the Supreme
Court of the United States, and thus have the constitutionality
of the conviction settled by the only Court in the land whose
judgment on constitutional questions is final.   This rule was
adopted because, although the discretionary power existed, yet
it was of more than doubtful propriety for a single United
States District or Circuit Judge to interfere with the judicial
procedure of a state or territorial Court when dealing with crim-
inal cases.

It was held in the case of *New York v. Eno*, 155 U. S. 89,
that:—

While the United States Courts had the discretionary power
to issue the writs of habeas corpus, and to summarily dispose
of a party as law and justice requires, "yet that discretion should
be exercised in the light of the relations existing under our sys-
tem of government between the judicial tribunals of the Union

and of the States; and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between Courts equally bound to guard and protect rights secured by the Constitution. * * *"

And again—"Where a Circuit Court erred in granting the prayer of the petition, the Supreme Court would reverse its action."

The Court holding in that case, "that the judgment is reversed with directions to dismiss the writ of habeas corpus and to remand the accused to the custody of the proper authorities."

It must be admitted as settled law, that this Court like all subordinate Courts is bound by precedent and peculiarly so where the question involved is one of constitutional law. The Supreme Court of the United States in the very recent case of *Markuson v. Boucher*, 175 U. S. 184, seems to have decided the question of jurisdiction involved in this case beyond dispute. It held as follows:

"We have frequently pronounced against the review by *habeas corpus* of the judgments of State Courts in criminal cases because some right under the Constitution of the United States was alleged to have been denied by the person convicted, and have repeatedly decided the proper remedy was by writ of error * * * We lately stated the rule," said the Court, "and the reasons for it in the cases of *Baker v. Grice*, 169 U. S. 284, and *Tinsley v. Anderson*, 171 U. S. 101-4."

The Court then proceeds to quote approvingly and at length from the latter decision as well as from *Baker v. Grice* and adds that:—

"The jurisdiction is more delicate, the reasons against its exercise stronger when a single judge is invoked to reverse the decision of the highest court of a state in which the constitutional rights of a prisoner could have been claimed, and may be were rightly decided, or if not rightly decided could be reviewed and redressed by a writ of error from this Court."

There is a long line of authorities sustaining the same proposition that, except in peculiarly urgent cases, no United States Circuit or District Court will discharge a prisoner by *habeas corpus* in advance of the usual and orderly course by writ of error from the Supreme Court of the United States. (*Pepke v. Cronan*, 155 U. S. 100; *In re Frederich*, 149 U. S. 70-6; *Whitten v. Tomlinson*, 160 U. S. 231, 242; *In re Duncan* 139 U. S. 449, 454; *In re Wood*, 140 U. S. 278, 289; *Cook v. Hart*, 146 U. S. 183; *In re Loney*, 134 U. S. 372.

So also in the case of *In re Spickler*, 43 Fed. Rep. 653, where it was held:—

"That where it appears the petitioner is held under the judgment of a State Court of competent jurisdiction before this Court should grant him a discharge it should be made to appear that the illegality of his detention is beyond fair question, and in all cases where the pivotal point has not been finally decided by the Supreme Court, but still remains a debatable question, the Circuit Court should not discharge the prisoner     *     *     * in such cases the Federal question can be readily presented to the Supreme Court, and as there exists this plain and proper remedy, it should be followed."

The above decisions which seem to all relate to the States, apply with equal force to the Territories.

See *Shute v. Keyser*, 149 U. S. 649, where it was held:—

"An appeal or writ of error lies to this Court (the Supreme Court of the U. S.) from the judgments or decrees of the Supreme Courts of the Territories, except in cases where the judgments of the Circuit Courts of Appeal are made final."

See also *Aztec Mining Co. v. Ripley*, 151 U. S. 79.

For the reasons above given, the Court holds that it cannot assume jurisdiction of this case. But is there a proper Federal question involved herein? If there is not, then there is an additional reason for not assuming jurisdiction because it is settled that a writ of *habeas corpus* must be denied if it is apparent

that the only result of its issue would be the remanding of the prisoner to custody. *In re Boardman*, 169 U. S. 39.

The conditions which existed on these Islands when annexed to the United States were unusual. This Territory had a civilization peculiar to itself, a government republican in form, with a written Constitution, civil and penal statutes, courts of justice with established jurisdiction. It had public schools and other institutions of learning and laws enforcing compulsory education. It was not mere territory lying in mid-ocean unused, but ready for man's use. It was a free, enlightened state possessing all the attributes of sovereignty, and when with its consent, the Islands were annexed by the United States, not only the lands, but the people with their laws and customs were annexed; and by the well established law of nations, these laws and customs remained in force until new laws were enacted for the government of the Territory. Sec. 19, *Sutherland on Stat. Construc.*, page 19; *Black on Constitutional Law*, page 208; *American Ins. Co. v. Canter*, 1 Pet. 511, 541; *Cross et al. v. Harrison* 16 How. 164, 184.

These Islands, although originally a monarchy, had become a republic and the people were somewhat versed in the principles of self government. So much was this so, that Congress waited nearly two years before enacting a law for the government of the Territory. In the meantime, no laws were enforced in the Territory of Hawaii but the laws of the Republic of Hawaii. The strong arm of the Federal government was not felt here. The former laws and judicial procedure remained and continued in force until the 30th day of April, 1900, when Congress passed the Enabling Act which went into effect on the 14th day of June, 1900. This Act though providing for a different form of government for the new Territory of Hawaii, continued in force many of the former laws of the Islands and prescribed especially:

"That all suits at law and in equity, prosecutions and judgments existing prior to the passage of this Act shall continue to

be as effectual as if this Act had not been passed. (Sec. 10, page 6. "Act to provide a government for the Territory of Hawaii.")

The offense charged and described in the petition for the writ of *habeas corpus* is libel, which under the laws of Hawaii is a misdemeanor. Section 305 of the Penal Laws (chap. 32, page 135) fixes the maximum punishment upon conviction for libel in the first degree at not more than one year's imprisonment at hard labor or by fine not exceeding one thousand dollars.

Felony is defined in the same laws, chapter 1, page 52, as follows:

"Sec. 3. The terms felony and crime are within the meaning of the provisions of this Code synonomous, and mean such offenses as are punishable with death or imprisonment for a longer period than two years or by the forfeiture of any civil or political right, and also larceny. Any offense not appearing to be a felony or crime is a misdemeanor."

Section 304 of the same laws, divides the offense of libel into "two degrees and the degree is to be found by the jury, or determined by the Court or magistrate authorized to decide on the facts."

Section 584 gives district magistrates jurisdiction "for the prosecution, trial and sentence of any person charged with either of the following offenses, namely: any misdemeanor.*  *  *"

It thus appears that there may be a trial and conviction for libel by a Court or magistrate without the intervention of a jury. There was, however, in this case a trial by jury as shown by the petition, the grievance set up being that the verdict of guilty was found and returned by nine jurors, whereas three jurors dissented "which verdict" the petitioner alleges, "was and is contrary to the Sixth Amendment of the Constitution of the United States."

Section 3, Article 6 of the Constitution of the Republic of Hawaii, authorized the Legislature to fix the number of jurors required to agree on a verdict in "offenses less than felonies."

In pursuance of this constitutional provision there was enacted by the Legislature of the Republic of Hawaii (Sec. 1345, Civil Laws), a law providing that "no jury, for the trial of any case, civil or criminal, shall be less than twelve in number; but when nine of such jury shall agree upon a verdict, they may render the same, and such verdict shall be as valid and binding upon the parties as if rendered by all twelve."

The first point urged upon the Court was that the petitioner had been convicted of "an infamous crime," but upon the argument it was admitted that petitioner was not convicted of ar famous crime but of a misdemeanor which seems to be born. by the statutes of the Republic of Hawaii herein before referred to.

At the common law the crimes which rendered a person infamous were treason, felony and *crimen falsi*. *U. S. v. Block*, 4 Sawy. 211. In the same case it is held that it is not the character of the punishment, but the nature of the act that makes the crime infamous.

The Sixth Amendment of the Constitution manifestly applies only to trials of criminal offenses which are triable only by jury and by what is known as a common law jury, and are above the grade of misdemeanors, which latter offenses are peculiarly within the jurisdiction of magistrates sitting alone, and do not necessarily require a jury.

As before stated, Section 83 of the Act of Congress for the government of the Territory of Hawaii, in part reads as follows:

"That the laws of Hawaii relative to the judicial department including civil and criminal procedure * * * are continued in force subject to modification by Congress or the Legislature * * * No person shall be convicted in any criminal case except by unanimous verdict of the jury."

"One of the amendments of the Enabling Act was to repeal the law authorizing less than unanimous verdicts in criminal cases. But this repealing clause only took effect when the En-

abling Act became a law, to-wit: June 14th, 1900, while this petitioner was convicted May 18th, 1900."

It was held in the case of *Maxwell v. Dow*, 176 U. S. 581, that:—

"Whether a trial in criminal cases not capital shall be by a jury composed of eight instead of twelve jurors and whether, in case of an infamous crime, a person shall be only liable to be tried after presentment or indictment by a grand jury, are proper to be determined by the citizens of each state for themselves, and do not come within the fourteenth amendment to the Constitution so long as all persons within the jurisdiction of the State are made liable to be proceeded against by the same kind of procedure, and to have the same kind of trial, and equal protection of the laws is secured to them."

The Court finds that petitioner's remedy is by writ of error from the Supreme Court of the United States; that the offense whereof the petitioner was convicted and sentenced was a misdemeanor and not an "infamous crime;" that there was no constitutional right under the fifth amendment to the Constitution of the United States to a presentment or an indictment by a grand jury in this case; and that a verdict of nine out of twelve jurors was authorized by the law of Hawaii which law in respect to this class of cases was not repealed until June 14, 1900, and after the trial of this case.

It appearing that no Federal question is presented for the consideration of this Court, it is without jurisdiction to entertain the petition for the writ of *habeas corpus*.

Let the petitioner be remanded.