Ex parte BEACH.

(District Court, S. D. California, S. D. July 31, 1919.)

No. 1760.

1. HABEAS CORPUS ⊜⇒11—VOLUNTARY SURRENDER.

Where a deputy collector of internal revenue was arrested by state officers charged with unlawfully committing an assault with a deadly weapon upon and with intent to kill the companion of one at whose car the collector fired to compel the occupant to stop, so that a search could be made to determine whether opium was being unlawfully introduced into the United States from Mexico, the fact that the collector, after being released on bond, voluntarily submitted himself to custody, does not deprive him of the right to procure a writ of habeas corpus out of the federal courts to test the legality of his imprisonment, the case not being the same as where one charged with an ordinary offense against state law after admission to bail surrenders himself, in order to secure his release in the state courts.

2. COURTS ⊜⇒508(7)—FEDERAL COURTS—ENJOINING PROSECUTION IN STATE COURT.

Federal courts should not stay prosecution against a federal officer, brought in the state court for an act committed in connection with his duty as such, unless justice or the righteous demands of the superior sovereignty require it.

3. UNITED STATES ⊜⇒49—SMUGGLING—OPIUM—ACT OF OFFICER.

As a deputy collector of United States customs service is authorized under Rev. St. § 3061 (Comp. St. § 5763), to stop, search, and examine any vehicle on which he may suspect there is merchandise subject to duty, introduced into the United States in any manner contrary to law, such collector, who was informed that one was introducing opium into the United States from Mexico by means of a motor car, is entitled to stop and search the motor car, and, where the occupants failed or refused to

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

stop and submit to search, the collector was justified in displaying force, as by shooting at the tires of the vehicle; hence, where it did not appear that the collector fired at the occupants, the fact that a shot passed through the top of the car furnishes no ground for prosecution in the state courts for assault with a deadly weapon.

4. REMOVAL OF CAUSES ☞22—PROSECUTION OF REVENUE OFFICER.

Judicial Code, § 33 (Comp. St. § 1015), relating to removal of prosecutions against revenue officers, does not apply to a petition by a federal officer in custody of state officials charged with an offense against the state laws, committed in the performance of his official duties.

At Law. In the matter of the application of Earl Beach for a writ of habeas corpus. Writ issued, and petitioner discharged.

The petitioner herein is, and for several years has been, deputy collector of United States customs service stationed near the border between the United states and Mexico, in San Diego county. In May last, one Daly, a contractor living in San Diego, but engaged in construction work in the Imperial Valley, was driving his Buick roadster from Imperial to San Diego, the road for several miles lying in close proximity to the border above mentioned. With Daly in his car was a friend named Alexander Gavin.

It was shown in evidence that the said Daly had been suspected by officers and agents of the United States customs service of being involved in the unlawful handling of opium across the border. In justice to Daly, it should be said that apparently there was no substantial basis for such suspicions. Nevertheless on the day in question the petitioner, Beach, was notified by telephone, by one of his fellow officers, that Daly was coming down the road in his automobile, and that he should be intercepted and his vehicle searched for contraband opium.

After the automobile was finally stopped, as detailed hereinafter, such search was made and no opium was found. Thereafter, and because of the shots fired by Beach, one of which passed through the top of the roadster, a criminal complaint was filed in the justice's court of San Diego township, sworn to by Gavin, charging that the said Beach on the occasion in question did "willfully, unlawfully, and feloniously commit an assault with a deadly weapon upon the person of one Alexander Gavin, with intent then and there to kill and murder said Alexander Gavin." In consequence of this complaint being filed, a warrant was issued, and the defendant was taken, or rather upon being notified surrendered himself, into custody, and immediately gave bond and was released. Thereafter, after consultation with the United States attorney, he and his bondsmen voluntarily surrendered him into custody of the sheriff of San Diego county. This custody was actual, and as a matter of fact he remained in the county jail until argument had been had on the petition herein. Immediately after his voluntary surrender into custody, however, as above stated, this petition in habeas corpus was verified by him, and upon presentation to the court the writ was ordered to issue.

Robert O'Connor, U. S. Atty., and Gordon Lawson, Asst. U. S. Atty., both of Los Angeles, Cal., for petitioner.

H. S. Utley, Dist. Atty., of San Diego, Cal., for respondent.

BLEDSOE, District Judge (after stating the facts as above). The district attorney of San Diego county, upon whom rests the responsibility of prosecuting, in the name and behalf of the people of the state of California, all violations of the law of the state, contends that this proceeding should be dismissed upon the ground, first, that the petitioner herein voluntarily surrendered himself into custody in order that he might be in position to ask for the interposition of this court through the medium of the writ of habeas corpus; and, secondly, on the ground

that the petitioner herein has violated the law of the state of California, and therefore should be brought to punishment in the tribunals of that state.

Relying upon the decisions in Re Gow, 139 Cal. 242, 73 Pac. 145, Ex parte Schmitz, 150 Cal. 663, 89 Pac. 438, and Matter of Ford, 160 Cal. 334, 116 Pac. 757, 35 L. R. A. (N. S.) 882, Ann. Cas. 1912D, 1267, and cases cited in those opinions, the state contends that, through the voluntary surrender of the petitioner, he is not entitled to the benefit of the remedial writ of habeas corpus. Those decisions hold, without exception, that where one is at large upon bail given in some criminal proceeding in a given jurisdiction or sovereignty, he will not be permitted voluntarily to surrender himself into custody, and thereby assert he is being deprived of his liberty, merely for the purpose of securing a writ of habeas corpus from a tribunal of the same jurisdiction or sovereignty, and thereby perhaps hasten his release from prosecution or further attack by such jurisdiction.

[1] The case at bar is essentially dissimilar. Here the petitioner, who admittedly was an officer and agent of the United States government, to wit, a deputy collector of the United States customs service, was engaged in the performance of the duties imposed upon him by law and in virtue of his employment. His claim and sole contention is that in what he did he was merely doing his duty under the law of the United States. The government of the United States, being the superior sovereignty in this country, has the right itself, in its own tribunals and through its own instrumentalities, to determine the requirements and the proper performance of duty under its own laws. The petitioner, claiming and asserting in proper form that he was merely engaged in attending to his duties as an officer of the United States government, is entitled to have that claim tested by the government to which he was primarily and personally responsible, the superior government in the nation. It must be true that, if he violated no law of the United States in performing the duties incumbent upon him as an officer thereof, he could have violated no law of the state of California, because no law of the state of California could be enforced which would be violative of, or in conflict with, the requirements of the law of the United States. That being true, asserting the doing of nothing save his duty to the United States, he is entitled as a matter of right, and in my judgment the government of the United States is entitled as a matter of right, to have the alleged violation of the law by him—that is, the question of whether he has violated any law or not—passed upon by the courts of the United States.

If he were under arrest in some proceeding brought by the United States, and had submitted himself to custody voluntarily in order that he might apply for a writ of habeas corpus in this court, and thereby have the question of the legality of his detention the sooner determined, a situation comparable with the Ford Case, for instance, both in form and in substance, would have been presented. Here, however, he is denying the authority of the courts of the state of California to sit in review upon the propriety of his conduct at all, claiming that in all that he did he was simply living up to the requirements of the law of

the nation. That being so, in my judgment he is entitled to have the question thus presented tried out in the tribunals of the nation authorized by law for the determination of such a question.

It is not the case of a man creating a merely colorable situation in order that he might have the benefit of some particular efficacious remedy to the exclusion of some other remedy in the same court, as it was in the Ford Case; but it is the case of a man who adopts the only means available to him to have a speedy and summary determination in the court of a different jurisdiction, in the court regularly constituted by the appropriate authority to construe the law under which he acted. For these reasons, I am constrained to believe that the holding in the cases referred to is not applicable in the peculiar situation developed in this proceeding.

[2] This court recognizes, of course, the delicacy of any action on its part looking to a nullification of the acts of officers of the state of California operating pursuant to the laws of that jurisdiction. It recognizes and appreciates the obvious propriety of withholding its staying hand except in the event that justice or the righteous demands of the superior sovereignty shall so require. The rule of conduct laid out for the court is stated with brevity and clarity in the decision of the United States Supreme Court in Whitten v. Tomlinson, 160 U. S. 231, 241, 16 Sup. Ct. 297, 301 (40 L. Ed. 406). The court said:

"In Ex parte Royall (117 U. S. 241, 251–253 [6 Sup. Ct. 734, 29 L. Ed. 868]), and in New York v. Eno (155 U. S. 89, 93–95 [15 Sup. Ct. 30, 39 L. Ed. 80]), it was recognized that in cases of urgency, such as those of prisoners in custody by authority of a state, for an act done or omitted to be done in pursuance of a law of the United States, or of an order or process of a court of the United States, or otherwise involving the authority and operation of the general government, or its relations to foreign nations, the courts of the United States should interpose by writ of habeas corpus."

As I read this decision and those upon which it is based, it is made mandatory upon the court, in this sort of a proceeding, under the circumstances herein developed, to assert the sovereignty of the government of the United States, and itself determine the question of the alleged violation of law.

[3] There was some conflicting evidence adduced with respect to the transaction as it occurred. I am persuaded, however, that the witnesses for the state, the occupants of the automobile in question, have been contradicted in several particulars by other witnesses, disinterested and disconnected with any of the parties to the transaction. From all the evidence I think it is reasonably clear from doubt that this petitioner was intending, and attempted, to do nothing except perform his duty as a customs officer.

He had no reason, cause, or disposition to injure either of the parties in the automobile; he disclaims any intention of shooting directly at either of them, or for the purpose of harming either of them. Pursuant to the terms of the statute (Rev. Stats. 3061 [Comp. St. § 5763]), under which he was acting, and which was the measure no less of his duty then of his authority, he had the right to "stop, search, and examine" any vehicle on which he might suspect there was merchandise subject to duty, introduced into the United States in any man-

ner contrary to law. The right and duty to stop the vehicle carried with it the right and duty to employ, or to the display of, such force as was reasonably necessary to effectuate the end required.

It is apparent from all the evidence that he was in receipt of information which gave him the right, genuinely and in good faith, to suspect that the parties in the automobile in question were transporting merchandise introduced into the United States contrary to law. By appropriate and innocuous methods, he indicated his desire to the driver of the automobile that he should stop. This desire for some reason, arising out of a mistake or otherwise, was not heeded, and the driver proceeded. Petitioner labored under the necessity, if he would perform his duty as required by law, of *stopping the automobile* in order that a search for contraband might be had. This he could accomplish by overtaking it with some speedier vehicle, which he did not then possess, or by intimidation of the occupants thereof through some show of force, or by puncturing one or more tires of the automobile, and thereby rendering it useless for further travel. He adopted the second avenue open to him. He fired a shot, intending by it only to intimidate the travelers. Through an inadvertence and involuntarily, in so far as he was concerned, the shot passed through the upper part of the top of the departing automobile. Thereafter two other shots were fired at the tires, neither of which were effective in the sense of puncturing the tires, but which were effective, by means of intimidation, in causing the travelers to stop the machine. No actual injury was suffered by either of the parties in the machine from the perforation of the top. What the result would be if petitioner were sued for the damage done to the automobile is in no wise involved in this proceeding. No untoward consequence, adverted to from time to time by the district attorney, such as death or injury of one of the parties, was brought about. What might have been the case had a shot fired by petitioner wounded or killed one of the travelers is a question which is not here presented. Suffice it to say that, being compelled by the requirements of his official employment to stop the particular machine then departing from him, I feel impelled to find that he used only such means or methods as were available to him, and to such extent only as the apparent necessities of the situation demanded, and that he was at no time possessed of any ulterior design or motive, or any intention of doing anything other than merely to perform his full duty toward his government. He had no intention either of violating any law, trespassing in any way upon any legal right of the occupants of the automobile, or of committing any crime, assault or otherwise. Under such a state of facts it is obvious that he may not now be subjected to prosecution by the state for an alleged infraction of its law. In re Lewis et al. (D. C.) 83 Fed. 159.

[4] The provisions of section 33 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1097 [Comp. St. § 1015]) respecting the removal of criminal actions from a state court to the federal court for trial are not decisive herein, in my judgment. If petitioner has committed no crime, and that matter is demonstrable in any appropriate manner known to the law, he is entitled to have an adjudication to that effect so that he may go his way, and, what is of genuine im-

portance also, that the business of the government of the United States, in which he is engaged, shall not be unduly interfered with through his further detention or compulsory attendance upon other tribunals. The practice and the holding in this case seem justified by the conclusions of the Supreme Court of the United States in Re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55.

An order will be entered discharging the petitioner from the custody of which he complained, to wit, that of the sheriff of the county of San Diego, pursuant to the proceedings and warrant had in the justice's court of San Diego county.