**CUNNINGHAM, Sheriff, v. SKIRIOTES.**

No. 8854.

Circuit Court of Appeals, Fifth Circuit.

Feb. 10, 1939.

George Couper Gibbs, Tyrus A. Norwood, and W. P. Allen, all of Tallahassee, Fla., for appellant.

W. B. Dickenson and W. B. Dickenson, Jr., both of Tampa, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Lambiris Skiriotes, arrested by the Sheriff of Pinellas County, Florida, under a warrant regularly issued by the County Judge of that County for violation of a State law against using diving apparatus in gathering sponges, was released on a writ of habeas corpus in the District Court of the United States, and the Sheriff has appealed. It appears from the warrant itself, and also from the Sheriff's return to the writ, that Skiriotes has done his diving at a point off the coast of Pinellas County about two marine leagues from the nearest land and from the line of mean low tide on the west shore of Florida. The District Judge held that, although the Constitution of Florida since 1868, art. 1, has fixed the State line three leagues from the mainland along the west shore, the State cannot exercise jurisdiction more than one league from the line of low tide consistently with the treaties of the United States which by Article 6 of the Constitution of the United States, U.S.C.A., are part of the supreme law. He found as special circumstances which justified interference with the State courts in advance of trial that the Supreme Court of

Florida had held itself as a creature of the State Constitution to be without power to abridge, annul or abrogate any of its provisions; and that a certiorari to the Supreme Court of the United States from the decision of the State Supreme Court "would be a theoretical and negligible right," so that the prisoner if not released on habeas corpus would be denied his constitutional rights.

■ The statute involved, enacted in 1917, and now section 8087 Comp.Genl.Laws 1927, reads: "It shall be unlawful for any person, persons, firm or corporation to maintain and use for the purpose of catching or taking commercial sponges from the Gulf of Mexico or the Straits of Florida or other waters within the territorial limits of the State of Florida, diving suits, helmets or other apparatus used by deep sea divers." It is a part of an extensive "Act to Protect and Regulate the Sponge Fishing Industry of the State of Florida," Acts Fla.1917, c. 7389, which declares the sponges within the jurisdiction of the State to be the property of the State, and forbids the taking of those measuring less than five inches in diameter, and restricts the means of taking to the use of hooks, and requires boats engaging therein to procure a license and pay a tax. The provision quoted, which uses language similar to that used in forbidding the taking of small sponges, is not to be understood as applying throughout the whole Gulf of Mexico or Florida Straits, but only to so much of these and other waters as are "within the territorial limits of the State of Florida." Thus read, the statute itself is not amenable to the objection here urged. Sponges, like oysters, do not fall under the exclusive jurisdiction of the United States, and the States may regulate the taking of them. Where oysters were the matter of controversy it was held that each State owns the beds of all tidewaters within its jurisdiction unless they have been granted away, and the fish in them, so far as they are capable of ownership, subject to the paramount right of Congress to regulate navigation and commerce. McCready v. Virginia, 94 U.S. 391, 394, 24 L.Ed. 248. The manner of taking them can be regulated by the State. Smith v. Maryland, 18 How. 71, 15 L.Ed. 269. The fault found is really with the State Constitution, Art. 1 of which declares the boundary of the State on the east to be the edge of the Gulf Stream and on the west to run three

leagues from the land. This delineation includes the point at which Skiriotes was diving for sponges, although outside the "three mile limit" said to be commonly observed in international law. It first appeared in the Constitution of 1868, which was approved by Congress in readmitting Florida to the United States, and was repeated in the present Constitution of 1885. So far as we are advised, the State of Florida has claimed without objection from any source jurisdiction over the western littoral waters accordingly for seventy years, and has exercised it under the statute here in question for the past twenty years. The Florida court upheld and applied the statute and held that the west shore counties included the waters for three leagues out, in Lipscomb v. Gialourakis, 101 Fla. 1130, 133 So. 104.

It would be an alluring task, if it were necessary, to trace out the origin and the present uncertainty in international law of the "three mile limit" on land sovereignty. Authority over littoral waters was debated by all the judges of England in Regina v. Keyn, 2 Exch.Div. 63, without any very certain result. The Privy Council of England in Direct U. S. Cable Co. v. Anglo-American Telegraph Co., 2 A.C. 394, held the jurisdiction of the government of Newfoundland extended all over Conception Bay, though it is from fifteen to twenty miles wide, largely because the English had so claimed for a long time and no one had objected. In our own case of Manchester v. Massachusetts, 139 U.S. 240, 11 S.Ct. 559, 35 L.Ed. 159, the control of fisheries was at issue, and it was held that Massachusetts had control to the extent of at least a marine league from shore. It is interesting to note that Chancellor Kent in his Commentaries, Vol. 1, p. 30, suggests that the United States, for fiscal and defensive regulations, and "for domestic purposes connected with our safety and welfare," could reasonably assert control within lines one of which is "from the South Cape of Florida to the Mississippi," and to claim immunity from belligerent warfare in the space "between the American coast and the path of the Gulf Stream." These discussions, however, all involve the rights of other countries, their ships and citizens. None such are involved in this case. Skiriotes states he is a citizen of the United States resident in Florida, and therefore is a citizen of Florida. His boat, from which his diving operations

were conducted, we may assume was a Florida vessel, carrying Florida law with her, but of course as modified by superior federal law. We doubt his ability to question before a court the boundaries which his own sovereign has set up. Domestic rather than international law governs his relations to his own State.

We do not understand that the boundary of Florida has been dealt with by any of the treaties referred to in this record, all made since the Florida Constitution. It may be assumed that a treaty with foreign countries dealing directly with the boundary here in question would fix it effectively, but it is not claimed that any of them does that. They assert more or less clearly in varying circumstances a general adherence to the theory of a three mile limit. Whether they affect at all the specific claim of the Florida Constitution we regard as very doubtful, at least as between the State of Florida and her citizens.

 The case standing thus, Skiriotes apparently being the first to challenge the application of the sponge fishing law to the full limit of the boundary fixed for the State, or to assert its supersession by federal treaty, ought the District Court by habeas corpus against a Sheriff to seek to determine this great question rather than to leave it to an orderly consideration by the State courts with the State itself a party, and to an orderly review by the federal Supreme Court? We think not. A careful reading of 28 U.S.C.A. § 453 makes it plain that a prisoner in jail under State authority is as a general rule not to be dealt with by federal habeas corpus instead of by trial and review. It is not clear that this case really comes within any exception named therein. It is claimed that the imprisonment is unconstitutional, but it is not clearly so. And if it be, the relief by habeas corpus is not of right, but discretionary, for a federal court will not ordinarily take a prisoner away from orderly prosecution in a State court, where with due process of law his rights may be asserted and protected as adequately though not so promptly. Where the jurisdiction of the State of

New York to deal with Indians and Indian affairs was challenged, the exclusive right being asserted to be in the United States, the Supreme Court held that there was no justification for a federal court to interfere by habeas corpus, even though it was claimed that the prisoner because of poverty would not be able to prosecute appeals in the State courts. United States v. Tyler, Sheriff, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138. In New York v. Eno, 155 U.S. 89, 15 S.Ct. 30, 39 L.Ed. 80, it was asserted the State court had no jurisdiction to prosecute for false entries on the books of a National bank, but the Supreme Court held it an abuse of discretion to discharge the prisoner by federal habeas corpus. The rule against interference, unless in extraordinary circumstances, is emphasized also in Baker v. Grice, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748; Minnesota v. Brundage, 180 U.S. 499, 21 S.Ct. 455, 45 L.Ed. 639. We cannot agree that the extraordinary circumstances put forward in this case exist. The federal Constitution (Article 6) requires that all State judges take an oath to support it and to be bound by it and the laws and treaties made in pursuance of it as the supreme law of the land, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." This supremacy the Supreme Court of Florida has repeatedly declared. We do not understand what is meant by saying that that court will not hold against the State Constitution if it conflicts with the supreme law. And if the State Constitution should be upheld against the charge of its repugnancy to the Constitution, laws or treaties of the United States, Skiriotes would not be restricted to the discretionary remedy of certiorari, but could appeal as of right to the Supreme Court of the United States, 28 U.S.C.A. § 344(a); and the appeal would have precedence on its docket, § 351. For the reason that no extraordinary circumstances exist, we are of opinion that a federal court should not interfere by habeas corpus. The judgment is reversed with direction to remand the applicant to the custody of the Sheriff.